JANE A. LANG AND PETER D. LANG, PLAINTIFFS-APPEL-LANTS, v. BARBARA H. BAKER AND THOMAS M. CARROLL, DEFENDANTS-RESPONDENTS.

JANE A. LANG AND PETER D. LANG, PLAINTIFFS-RESPON-DENTS, v. BARBARA H. BAKER, DEFENDANT-APPELLANT, AND THOMAS M. CARROLL, DEFENDANT-RESPONDENT.

Argued October 8, 1985—Decided December 12, 1985.

148

*Gary C. Algeier* argued the cause for appellants and respondents Jane A. Lang, et al. (*Rand & Algeier*, attorneys; *Mr. Algeier* and *John F. McDonnell*, on the briefs).

*Elliott Abrutyn* argued the cause for respondent and appellant Barbara H. Baker (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys; *Henry G. Morgan,* of counsel; *Mr. Abrutyn, Robert John Aste, Michael S. Feldman* and *Arthur D. Fialk,* on the briefs).

*John J. O'Donnell* argued the cause for respondent Thomas M. Carroll (*O'Donnell, McCord, Leslie & O'Toole,* attorneys; *Michael D. Blythe,* on the brief).

*Arthur Ian Miltz* submitted a brief on behalf of *amicus curiae* ATLA–NJ, The New Jersey Affiliate of the Association of Trial Lawyers of America (*Kronisch & Schkeeper,* attorneys).

*Michael J. Cernigliaro* submitted a brief on behalf of *amicus curiae* New Jersey Defense Association, an affiliate of the Defense Research Institute (*Campbell, Foley, Lee, Murphy & Cernigliaro,* attorneys).

PER CURIAM.

We granted certification in these consolidated petitions in order to determine whether the statement of damages required under Rule 4:5–2 places a ceiling on the amount of damages recoverable in a civil action. Because we are satisfied that the Rule has no such binding effect, we reverse the judgment below with directions that the judgment based on the original jury verdict be reinstated.

The question arose in the context of a negligence suit occasioned by a September 1979 two-car automobile accident that occurred in a heavy rain storm during the evening rush hour on Route 287 in Morris County. Plaintiff Jane Lang was a passenger in a car being operated by defendant Thomas Carroll, which struck the rear of a vehicle stalled in the right-hand lane of traffic on the superhighway's southbound portion. The stalled vehicle, driven by defendant Barbara Baker, had been in that position for approximately forty-five minutes while cars swerved around her to the left and onto the shoulder of the

highway to the right. A jury awarded Jane Lang $450,000, and her husband, plaintiff Peter Lang, $50,000. The jury determined that the defendant drivers, Barbara Baker and Thomas Carroll, were each fifty percent at fault in causing the Langs' injuries.

The Appellate Division set aside the jury's award on the basis of a statement of damages submitted prior to trial in which the plaintiffs initially claimed a total of $175,000 in damages. The appellate panel held that this statement, required under Rule 4:5–2 to be submitted upon the request of an opposing party, was binding on the plaintiffs and set an upper limit on their recovery. It therefore remanded the matter for reduction of the judgment against defendants from $500,000 to an amount not to exceed $175,000. 195 *N.J.Super.* 430, 435 (App.Div. 1984). The Appellate Division did, however, leave open the possibility that the plaintiffs could file a motion for relief from the Rule 4:5–2 limitation "in the manner of *R.* 4:9–1 and *R.* 4:9–2," which govern amendments to the pleadings. *Id.* at 435.[1]

---

[1]The Appellate Division opinion occasioned plaintiffs' petition for certification on the statement-of-damages issue. While that petition was pending before us, the trial court entertained motions on the remand. It first amended the judgment down to $175,000 in accordance with the Appellate Division's opinion. The trial court then amended the judgment as to defendant Carroll up to $200,000, ruling that because Carroll had originally offered the plaintiffs his insurance policy limit, he had in effect negotiated a settlement with the plaintiffs for that amount, which at the trial all involved assumed to be a single policy with a $100,000 limit. The $200,000 figure represented that sum plus $100,000 under a second policy on Carroll that had been subsequently discovered. The court then reinstated the original $500,000 award, ruling that the plaintiffs had effectively amended their damage claim during trial when Baker refused their settlement offer in excess of $175,000. The net result was a total judgment, including pre-judgment interest, of $626,665, $200,000 of which was allocated against defendant Carroll, with the balance of $426,665 awarded against Baker—this despite the jury's conclusion that both defendants were equally at fault. These rulings prompted an appeal by Baker on the grounds that the trial court abused its discretion in restructuring the jury award. We granted direct certification of that appeal, 99 *N.J.* 231 (1985), and consolidated it with the previously-certified appeal of the plaintiffs. Because of our decision

In giving binding effect to the Rule 4:5–2 damage statement, the Appellate Division overruled *Perdomo v. Goldstein,* 122 *N.J.Super.* 14 (Law Div.1972), heretofore the only case to have considered the issue. For eleven years, *Perdomo*'s holding that the Rule 4:5–2 statement had "no binding effect whatsoever," 122 *N.J.Super.* at 17, had been the accepted understanding. *See, e.g.,* S. Pressler, *Current N.J. Court Rules,* Comment *R.* 4:5–2, at 616 (1985). We see no compelling reason to change that understanding now.

I

■ The civil practice rule in question provides:

Except as may be more specifically provided by these rules in respect of specific actions, a pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain a statement of the facts on which the claim is based, showing that the pleader is entitled to relief, and a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded. If unliquidated money damages are claimed in any court, other than the county district court, the pleading shall demand damages generally without specifying the amount. *Upon service of a written request by another party, the party filing the pleading shall within 5 days after service thereof furnish the requesting party with a written statement of the amount of damages claimed, which statement shall not be filed except on court order.*

[*R.* 4:5–2 (emphasis added).]

Our review of the history of this Rule and its amendment adding the italicized language in 1960 convinces us that a plaintiff's compliance with a request for a specific statement does not, by itself, make the statement a part of the pleadings and cap the potential recovery.

The Appellate Division thought such a construction would render the Rule 4:5–2 statement of damages meaningless, and accomplish no more than what "could be achieved without a statement, by means of a telephone call." 195 *N.J.Super.* at 433. While we understand the panel's commendable desire to

---

on the Rule 4:5–2 issue, we find it unnecessary to address defendant Baker's claim that the trial court abused its discretion in amending the jury award.

avoid what it thought would be a meaningless construction, we are nevertheless satisfied that the policy considerations that underlie the damage-pleading provisions of Rule 4:5–2—considerations that in fact represented a move away from the former practice of binding a plaintiff to the amount of damages pled in the complaint—necessitate our reversal.

## II

Prior to the adoption of the Rule's current language in 1960,[2] the common practice in New Jersey was that a plaintiff's initial pleading contain a demand for relief that specifically stated the dollar amount of damages claimed—the old *ad damnum* clause of the complaint. *See* former *R.R.* 4:8–1, *reprinted in New Jersey Court Rules* 269 (Gann 1958). For many years, it was commonly held that the *ad damnum* demand, because it was a part of the pleading, set the upper limit on a plaintiff's recovery. *Excelsior Electric Co. v. Sweet,* 59 *N.J.L.* 441, 444 (E. & A. 1896). A verdict in excess of the demand was therefore impermissible, the rationale being that the "defendant regulated his conduct at the trial with reference to * * * the damages * * * stated, and might have modified his course of defence had a claim for a larger sum been in controversy." *Id.* at 444; *see also North & Son, Inc. v. North,* 93 *N.J.Eq.* 70, 72 (Ch.1921) (party limited to recovery as stated in *ad damnum* clause); 22 Am.Jur.2d *Damages* § 276 (1965) (complainant cannot recover greater damages than amount demanded in pleadings).

While it was generally assumed that the specific damage demand had some positive value as an informational tool—it could, for example, serve as an immediate jurisdictional barometer of the amount in controversy—its potential attributes were significantly outweighed by one lamentable drawback: the binding effect of the *ad damnum* demand tended to encourage

---

[2]Rule 4:5–2 is based on former *R.R.* 4:8–1, which was promulgated in 1960. The text of the Rule has remained substantially unchanged through subsequent revisions of the civil practice rules.

exaggerated claims. Some attorneys, facing the possibility of being locked into a lesser award when the jury was willing to give more, protected their clients' interests by demanding "astronomical sums" that bore "no relation whatsoever to any realistic appraisal of the value of the case * * *." *Report of the New Jersey Supreme Court's Committee On Rules* (March 24, 1960), *reprinted in* 83 *N.J.L.J.* 145, 152 (1960).

Even the gradual liberalization of pleading rules to allow amendments to conform the complaint to the amount actually awarded, *see Randazzo v. Bacque*, 37 *N.J.Super.* 548, 557 (App.Div.1955) (construing former *R.R.* 4:55–4 as allowing trial court to conform *ad damnum* demand to amount of verdict), did not discourage the excessive demands. Such amendments were in many jurisdictions a matter left to the discretion of the trial court. *See Randazzo, supra,* 37 *N.J.Super.* at 557; *Smith v. Hellman*, 57 *A.D.*2d 566, 567, 393 *N.Y.S.*2d 734, 735 (App. Div.1977) (trial court's granting of leave to amend to increase *ad damnum* was abuse of discretion). Thus, while liberalized amendment rules may have decreased the *probability* of a plaintiff's being bound to an underestimated initial demand, that prospect nevertheless remained a "frightening possibility" that encouraged caution by way of exaggerated claims. *Public Relations And The Bar—The Ad Damnum Clause*, 82 *N.J.L.J.* 108 (1959).

The evil of this practice was not so much in its capacity to prejudice the jury's determination of damages—although this was clearly a concern that prompted this Court in 1958 to forbid the *ad damnum* demand from being brought to the attention of the jury. *See Botta v. Brunner*, 26 *N.J.* 82, 104 (1958). Rather, the true evil of the practice was in the growing public perception that these huge damage demands were symptomatic of a defect in the legal profession. Even though the complaint's demand, after *Botta*, would have little if any effect on the substantive determination of damages, the practice by some of routinely demanding unrealistic damages in the complaint cast the entire legal profession in disrepute. An editorial in the

*New Jersey Law Journal* aptly illustrated the growing public sentiment of the time in its examples of two plaintiffs who, having suffered some minor injuries, proceeded to demand damages wholly disproportionate to the realistic value of their claims. The editorial points out that given such excessive demands, it was not surprising that some members of the public were led to wonder whether "courts and lawyers [were] engaged in some sort of conspiracy to commit extortion." *Public Relations And The Bar, supra,* 82 *N.J.L.J.* 108. Criticism came from within the legal system as well. *See Botta, supra,* 26 *N.J.* at 104 (*ad damnum* has no evidentiary function because it represents routinely-excessive claims); *Report Of The Committee On Rules, supra,* 83 *N.J.L.J.* at 152 (inflated damage demands confuse clients and the general public alike).

As unfortunate as the appearance of a profession devoid of reality was, the rush to inflate the demand to a "safe" level also undermined whatever positive value the *ad damnum* might have had as a reliable source of information for defendants wishing to initially evaluate a claim and begin preparing a strategy of defense. *See Report Of The Committee On Rules, supra,* 83 *N.J.L.J.* at 152 ("the grossly exaggerated figures now in use furnish no guide of any substantial value for any purpose").

### III

It is against this backdrop that the Committee On Rules in 1960 recommended scrapping the *ad damnum* demand in favor of a system requiring that unliquidated damages be pled "generally without specifying the amount." [3] As originally sub-

---

[3]We note that other jurisdictions have achieved the similar effect of moving from specific to general-damage pleading, though the means may differ from our own. New York courts, for example, view the *ad damnum* demand as archaic surplusage: " * * * there is no requirement that a demand for damages specify a definite sum of money." *Streit v. Parker,* 94 *Misc.*2d 295, 296, 404 *N.Y.S.*2d 308, 310 (Sup.Ct.1978). Texas, with similar effect, allows "a

mitted, the proposed Rule contained no provision requiring the plaintiff to submit any indication of specific damages. *See Report Of The Committee On Rules, supra,* 83 *N.J.L.J.* at 152 (text of proposed Rule 4:8–1). In promulgating the Rule, however, the Court modified the Rule by adding the statement-of-damages language now found in Rule 4:5–2. The provision appeared to be a modified version of the verified complaint rule briefly tried in 1957 and 1958. Proponents of a return to the formalized verified statement argued that it would speed discovery, encourage faster settlements, and reduce court congestion. *See Report of State Bar Committee on Practice, Pretrial Procedure and Calendar Control,* 83 *N.J.L.J.* 173, 179–80 (1960). In adopting the Rule as it now reads, the Court appeared to be striking a compromise between encouraging prompt discovery, while discouraging overreaching claims.

Viewed in this context, we are convinced that the inclusion in the new system of general-damage pleading of a right in the defendant to receive a specific statement of damages represented an attempt to retain the potential informational benefits of specific-damage pleading while eliminating the abuses engendered by the feared binding effect of the old pleadings. Logically, the new Rule would do little to eliminate the abusive demands of the past if a statement of damages potentially bound plaintiffs to that amount. Quite the contrary is true. Plaintiffs faced with the possibility of being bound by the

---

general allegation of damages" to "suffice as a basis for proof of those damages which naturally and necessarily result therefrom * * *." *Sherrod v. Bailey,* 580 *S.W.*2d 24, 28 (Tex.Civ.App.1979). Other courts have achieved a general-pleading effect by simply nullifying the importance of the specific demand and giving the claimant what he or she is entitled to, rather than what they have demanded. *See, e.g., Castaic Clay Mfg. Co. v. Dedes,* 167 *Cal.App.*3d 1106, 1113, 213 *Cal.Rptr.* 759, 763 (Ct.App.1985) (damages may be awarded in absence of any prayer for relief); *Deese v. Parks,* 157 *Ga.App.* 116, 117, 276 *S.E.*2d 269, 271 (Ct.App.1981) (demand is no part of cause of action and plaintiff's failure to include demand is not fatal to complaint); *Niederkorn v. Niederkorn,* 616 *S.W.* 2d 529, 533 (Mo.Ct.App.1981) (prayer for relief is not part of pleadings and court may award relief plaintiff is entitled to under general demand).

statement would plead damages generally, and then do exactly what they did under the old system—grossly inflate the statement of damages to protect against the prospect of a court unwilling to conform the amount stated to a verdict in excess of the "demand." It was this understanding of the policies involved that led contemporary commentators to view the statement of damages as a non-binding informational device for the benefit of defendants. *See* 2 M. Schnitzer & J. Wildstein, *New Jersey Rules Service* AIV–131 to 147 (1961 Supp.) (statement of damages in 1960 amendment was intended for informational benefit of defendant and is non-binding unless filed by court order).[4]

We concur in the view that the unfiled statement of damages is for informational purposes and is non-binding. Among other things, the statement may serve as a guide for immediately determining whether there is a sufficient amount in controversy to support jurisdiction in the federal courts, or aid an insurance carrier in assessing whether to promptly notify a policyholder that he or she may be exposed to personal liability beyond the limits of the policy. *See id.*, Supp. at 82–83. Perhaps most important, the statement can serve as a realistic starting point for settlement negotiations.[5]

Once it is understood that the statement cannot later undermine a larger verdict, the party submitting the statement has every incentive to make a candid, conscientious valuation of his

---

[4]Both Morris M. Schnitzer, Esq., and Julius Wildstein, Esq., were serving on the Supreme Court Committee On Rules at the time the Committee proposed the Rule and at the time of its adoption by the Court.

[5]This much said, we concede that our view of the damage-pleading provisions of Rule 4:5–2 renders the statement of damages somewhat superfluous in light of today's liberal discovery rules. Nonetheless, the two are not so overlapping as to render the statement of damages meaningless. The discovery process often takes considerable time. Under Rule 4:5–2, by contrast, a defendant can require a plaintiff to respond within five days with a specific indication of damages. The expeditious receipt of this information, particularly to a litigant who may be eager to settle, is of no small significance.

or her claim. We expect no less from plaintiffs' attorneys. We believe that was done here. The Langs' initial statement that they estimated their claim at $175,000 bears witness that plaintiffs need not always make the unreasonable demands that prompted the very Rule we now expound.

A note of caution is in order, however, with respect to the attempted offensive use of a statement of damages to influence a *Rova Farms* excess claim.[6] Attorneys should not manipulate the statement for that purpose. As the statement is non-binding, it is assumed to reflect a conscientious estimate of the value of the claim. There is a difference between a settlement figure and an estimate of value. The former reflects a congeries of variables including potential liability, coverage issues, and comparative negligence; the latter represents an estimate of what the case would be worth in the absence of such variables.

We therefore decline to hazard a return to the abuses of the past by formalizing the statement as a part of the pleading or by giving it binding effect. To do so would only again tend to encourage the exaggerated claims that would truly render the statement "meaningless" as a discovery device, while at the same time endangering the credibility of the legal profession.

## IV

We feel compelled to make one final comment. Even were we to regard the statement of damages as part of the

---

[6]Under *Rova Farms Resort, Inc. v. Investors Ins. Co. of America,* 65 *N.J.* 474 (1974), an insurer may be liable for the difference between its policy limit and the amount of an excess judgment against its insured if the insurer fails to fulfill its affirmative duty to negotiate in an attempt to bring the demand within policy limits or within an amount that can be realized by a combination of the policy limit and what the insured is willing and able to contribute. *Id.* at 496. *See also Yeomans v. Allstate Ins. Co.,* 130 *N.J.Super.* 48, 51–52 (App.Div.1974) (insurance company held liable for difference between its policy limit and the amount of judgment against its insured where insurer failed to negotiate for a reduction in claimant's demand).

pleadings and thus equate it with a demand for damages, modern pleading practice should not, on the facts of this case, limit the Langs to their initial claim of $175,000. Under our own Rule 4:42–6, "[e]very final judgment * * * shall grant the relief to which the party * * * is entitled even though he has not demanded such relief in his pleadings * * *." The provision is a common one found in many states and is modeled after *Fed.R.Civ.P.* 54(c). It appears universally agreed that the effect of the Rule is to significantly curtail, if not totally neutralize, the binding effect of the specific demand for damages. Under the Rule, a verdict in excess of the demand is not prohibited unless it would clearly prejudice the opposing party. In the absence of such prejudice, the pleadings would be amended, either on motion of a party, or motion of the court, to conform the pleadings to the evidence of damage as determined by the trier of fact. *See Stineman v. Fontbonne College,* 664 *F.*2d 1082, 1088 (8th Cir.1981); *United States v. Marin,* 651 *F.* 2d 24, 30–31 (1st Cir.1981); *Bail v. Cunningham Bros., Inc.,* 452 *F.*2d 182, 187–88 (7th Cir.1971); *Miller v. District of Columbia,* 479 *A.*2d 329, 331 (D.C.1984); *Precopio v. City of Detroit,* 415 *Mich.* 457, 461–64, 330 *N.W.*2d 802, 804–05 (1982); *Loomis v. Civetta Corinno Constr. Corp.,* 54 *N.Y.*2d 18, 21–23, 429 *N.E.*2d 90, 91–92, 444 *N.Y.S.*2d 571, 572–73 (1981); *Ewert v. Anderson,* 359 *N.W.*2d 293, 296–97 (Minn.Ct.App.1984); *Danaher v. Partridge Creek Country Club,* 116 *Mich.App.* 305, 315, 323 *N.W.*2d 376, 380 (Ct.App.), *appeal dismissed,* —— *Mich.* ——, 325 *N.W.*2d 2 (1982); *Rotello v. Ring Around Products, Inc.,* 614 *S.W.*2d 455, 463 (Tex.Civ.App.1981); *Dils v. City of Chicago,* 62 *Ill.App.*3d 474, 480–81, 378 *N.E.*2d 1130, 1135–36 (App.Ct.1978); *DeCicco v. Trinidad Area Health Ass'n,* 40 *Colo.App.* 63, 64, 573 *P.*2d 559, 561 (Ct.App.1977); *Whitfield Tank Lines, Inc. v. Navajo Freight Lines, Inc.,* 90 *N.M.* 454, 461, 564 *P.*2d 1336, 1343 (Ct.App.), *cert. denied,* 90 *N.M.* 637, 567 *P.*2d 486 (1977).

█ We perceive no prejudice or injustice in awarding the Langs the damages determined by the jury in the instant case.

Mrs. Lang, the faultless passenger in this unfortunate accident, has been blind since birth. She had compensated for her lack of vision by developing a remarkable sense of touch, but the accident deprived her of much of the use of her right arm and hand. Communication and the other incidents of what had been her well-adjusted life have as a result become severely restricted. The accident left her one-handed and, in a sense, truly sightless.

The record below demonstrates quite clearly that the defendants, as a result of settlement negotiations conducted prior to and during trial, were on notice that the plaintiffs fully intended to seek more than the $175,000 initially stated in their Rule 4:5–2 damage statement. As early as the first settlement conference, the plaintiffs made clear their willingness to settle for what all involved assumed to be the maximum combined insurance coverage of $200,000, which, of course, was more than the figure stated in plaintiffs' Rule 4:5–2 statement. Continued negotiations during trial proved fruitless and the plaintiffs manifested their view that this $200,000 figure would not necessarily hold if the case went to the jury. In the end, they rejected just such an offer as the jury adjourned to deliberate. On these facts, we think it was obvious to the defendants both before and during the trial that the plaintiffs valued their case in excess of the $175,000 originally stated. Under such circumstances, we would not hesitate to follow the general rule and conform the pleadings to the verdict even if we were to interpret the damage statement in Rule 4:5–2 as a limiting part of the pleadings.

We need not, however, reach that issue because we do not, for the reasons stated above, view the statement of damages as a part of the pleadings. Like other jurisdictions that have either eliminated or neutralized the binding effect of the *ad damnum* demand, we view Rule 4:5–2 as a clean and welcome break with the past.

Our holding that the plaintiffs' recovery here was not limited to the amount specified in their pretrial statement of damages obviates the need to address the other issues raised by the parties. Accordingly, the judgment of the Appellate Division is reversed and the cause remanded with directions to reinstate the original jury verdict.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices HANDLER, O'HERN, GARIBALDI and STEIN— 5.

*Opposed* —None.