

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-15-2006

# Morgan v. Gay

Precedential or Non-Precedential: Precedential

Docket No. 06-4497

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Morgan v. Gay" (2006). *2006 Decisions.* Paper 10.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/10

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL


IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  06-4497

SARAH MORGAN, on behalf of herself
and all others similarly situated

v.

DENNIS W. GAY; GINA GAY;
BASIC RESEARCH, L.L.C.;
BAN, L.L.C.; KLEIN-BECKER, USA L.L.C.;
COVAXIL LABORATORIES, L.L.C.;
CARTER-REED COMPANY, L.L.C.,
a/k/a THE CARTER-REED COMPANY;
A.G. WATERHOUSE, L.L.C.;
ALPHAGENBO TECH, L.L.C.; BODY FORUM, L.L.C.;
BODY INNOVENTIONS, L.L.C.; COVARIX, L.L.C.;
BYDEX MANAGEMENT, L.L.C.; NUTRASPORT, L.L.C;
SOVAGE DERMALOGIC LABORATORIES, L.L.C.;
WESTERN HOLDING, L.L.C.; GEORGE EVAN BYBEE;
DANIEL B. MOWREY, Ph.D;
NATHALIE CHEVREAU, Ph.D;
MITCHELL K. FRIEDLANDER; MICHAEL MEADE,

Appellants

On Appeal from the United States District Court
for the District of New Jersey
District Court No. 06-cv-01371
District Judge: The Honorable Garrett E. Brown, Jr.

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 27, 2006

Before: BARRY, SMITH, and NYGAARD, *Circuit Judges*

(Filed: December 15, 2006)

John M. Agnello
Kerrie Heslin
Carella, Byrne, Bain, Gilfillian, Cecchi, Stewart & Ostein
5 Becker Farm Rd.
Roseland, NJ 07068

Christian H. Gannon
Walter H. Swayze, III
Robert J. Kenney
Maria C. Carlucci
Segal McCambridge Singer & Mahoney, LTD.
830 Third Ave., Suite 400
New York, NY 10022
*Counsel for Appellants*

Jeffrey I. Carton
Jill C. Owens
Meiselman, Denlea, Packman, Carton & Eberz, PC
1311 Mamaroneck Ave.
White Plains, NY 10605
*Counsel for Appellee*

_____

OPINION

_____

SMITH, *Circuit Judge*.

I.

This appeal requires us for the first time to interpret certain provisions of the newly-enacted Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified in scattered sections of 28 U.S.C.). Specifically, after the defendants removed the case from state court to the District Court, the plaintiff moved to remand to state court.[1] That motion was granted. Because we agree that the District Court properly placed the burden of proof on the defendants to

---

[1]We use the singular version of "plaintiff." The plaintiff is "Sarah Morgan, on behalf of herself and all others similarly situated."

establish federal subject matter jurisdiction under CAFA, and appropriately determined that the defendants failed to prove that the plaintiff's claims exceeded CAFA's amount in controversy requirement of $5 million, we will affirm.

II.

We repeat verbatim the District Court's recitation of the facts of this case because of its brevity and accuracy:

This civil action is based upon false advertising claims by New Jersey purchasers of the skin cream StriVectin-SD. Plaintiff asserts violations of the New Jersey Consumer Fraud Act, N.J.C.A. 56:8-1, et seq., as well as claims under common law fraud, unjust enrichment and breach of express and implied warranties. Originally, the instant action was filed as a nationwide class with representatives in New York, Ohio, Indiana, Mississippi, Texas, New Jersey, Illinois and Vermont. Plaintiff's chosen forum for the original Complaint was the United States District Court, Southern District of New York. At that time, Defendants moved to transfer the action to the District of Utah, based upon a related case previously filed in that district and because all Defendants maintained residences and/or principal places of business in Utah. Defendants' venue motion was ultimately granted.

Thereafter, Plaintiff voluntarily dismissed the action and re-filed a modified, New Jersey law-based Complaint in the

Superior Court of New Jersey, Law Division, Monmouth County on January 30, 2006.  On March 22, 2006, Defendants removed this action pursuant to 28 U.S.C. §§ 1441 and 1453 based on federal diversity jurisdiction pursuant to 28 U.S.C. § 1332.  On April 20, 2006, Plaintiff filed this Motion to Remand back to New Jersey Superior Court.  On May 26, 2006, Defendants moved to transfer the case to the United States District Court, District of Utah (Central Division).

The present Complaint addresses the amount in controversy as follows: "this action ... seeks ... trebled compensatory damages; including but not limited to a refund of the purchase price that each member of the class paid for StriVectin-SD; ... punitive damages; ... injunction; interest; court costs; and attorneys fees; however, the total amount of such monetary relief for the class as a whole shall not exceed $5 million in sum or value."

*Morgan v. Gay*, Civ. No. 06-1371 (GEB), 2006 WL 2265302 at *1 (D.N.J. Aug. 7, 2006).

On August 7, 2006, the District Court granted the plaintiff's motion to remand to state court, concluding that the requisite amount in controversy of $5 million had not been demonstrated.  The defendants then timely filed a Petition for Leave to Appeal on August 16, 2006, as well as a motion for a stay of the Remand Order pending appeal.  The District Court granted the stay that same day.  This Court then granted the

5

defendants leave to appeal. *See Morgan v. Gay*, 466 F.3d 276 (3d Cir. 2006). Pursuant to § 1453(c)(2), we have 60 days from October 16, 2006 to decide the appeal. *See, e.g.*, *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1326-27 (11th Cir. 2006); *Braud v. Transp. Serv. Co. of Illinois*, 445 F.3d 801, 803 n.2 (5th Cir. 2006). *But see Patterson v. Dean Morris, L.L.P.*, 444 F.3d 365, 370 (5th Cir. 2006) (Garza, J., dissenting) (arguing that the plain language of § 1453(c)(2) mandates that the 60 day time limit begin from when the appeal is filed).

### III.

We exercise jurisdiction pursuant to 28 U.S.C. § 1453(c). Our standard of review for issues of subject matter jurisdiction is plenary. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

### IV.

### A.

The first issue we address is whether the District Court properly placed the burden of proof on the defendants to establish federal subject matter jurisdiction under CAFA. The defendants concede that CAFA is silent as to which party bears the burden of proof on the amount in controversy. In an attempt to convince this Court that the burden to establish the amount in controversy falls upon the plaintiff rather than themselves, the

defendants focus on the legislative history of CAFA as opposed to the text of the statute.

The defendants are correct that the legislative history indicates that some members of Congress probably wished to switch the burden of proof from the party seeking removal to the party seeking remand. The Senate Judiciary Committee Report (issued ten days after CAFA was signed by the President) states that "[i]f a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied)." S. Rep. No. 109-14, at 42 (Feb. 28, 2005), reprinted in 2005 U.S.C.C.A.N. 3, 40. *See also id*. at 44 (noting that "plaintiff should have the burden of demonstrating that 'all matters in controversy' do not (in the aggregate) exceed the sum or value of $5,000,000, exclusive of interest and costs"). Further, this Senate Report states that "new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions be heard in a federal court if properly removed by any defendant." *Id*. at 43. These passages indicate that at least some members of the Senate thought that CAFA shifts the burden to the party wishing to litigate in state court and, more generally, close cases should fall under federal jurisdiction.

The defendants' reliance on CAFA's legislative history

7

is misplaced, for at least two reasons. First, the actual text of CAFA makes no reference to this burden-shifting legislative history. Prior to the passage of CAFA, the party seeking to remove a case to federal court bore the burden to establish jurisdiction. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing these elements."); *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). The text of CAFA does not explicitly address whether it shifts this burden to the party seeking to keep the class action in state court. The Seventh Circuit was the first court of appeals to confront this issue. Writing for a unanimous panel, Judge Easterbrook went so far as to state that "none [of the statute's language] is even arguably relevant" to the burden-shifting inquiry. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). The problem with relying solely on CAFA's legislative history is that the portion that supports burden-shifting "does not concern any text in the bill that eventually became law."[2]

---

[2]Judge Easterbrook states his point more forcefully later in the opinion: "But when legislative history stands by itself, as a naked expression of 'intent' unconnected to any enacted text, it has no more force than an opinion poll of legislators—less, really, as it speaks for fewer. Thirteen Senators signed this report and five voted not to send the proposal to the floor. Another 82 Senators did not express themselves on the question; likewise 435 Members of the House and one President kept their silence." *Brill*, 427 F.3d at 448.

8

The only section of CAFA that might be applicable to this debate is its "Findings and Purposes," which broadly indicates an intent by Congress to make federal courts more available to class action litigants.[3] However, the Findings and Purposes say nothing about burden-shifting, and should not be taken by this Court as an indication that Congress intended to shift a long- and well-established burden. *See Miedema*, 450 F.3d at 1329-30 (rejecting the Findings and Purposes for similar reasons). It should take more than a few lines in a Senate Judiciary Committee Report and some vague language in a statute's "Findings and Purposes" section to reverse the well-established proposition that the party seeking removal carries the jurisdiction-proving burden. Second, and related, as a general matter this Court need not look to legislative history at all when the text of the statute is unambiguous and there is no indication that Congress, for example, made a typographical error in drafting this part of the statute. *Cf. Morgan v. Gay*, 466 F.3d at 279 (stating that, where the "uncontested intent of Congress" shows that the statute contains a typographical error, the court's

---

[3]Section 2(b) of CAFA states that "[t]he purposes of this Act are to (1) assure fair and prompt recoveries for class members with legitimate claims"; (2) restore the intent of the framers of the United States Constitution by providing for federal court consideration of interstate cases of national importance under diversity jurisdiction; and (3) benefit society by encouraging innovation and lowering consumer prices." 28 U.S.C. § 1711 note.

duty is to make a "common sense revision" to the text of the statute).

While several district courts have shifted the burden from the party seeking removal, no appellate court to date has done so. In addition to the aforementioned Seventh and Eleventh Circuits (in *Brill* and *Miedema*, respectively), the Ninth Circuit has also held that the burden remains with the party seeking removal. *See Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006) (per curiam). We see no reason to create an exception for CAFA to the well-settled practice in removal actions. Accordingly, we join our sister courts of appeals. Under CAFA, the party seeking to remove the case to federal court bears the burden to establish that the amount in controversy requirement is satisfied.

B.

The second issue we address is whether the District Court appropriately determined that the defendants failed to prove that the plaintiff's claims exceeded CAFA's amount in controversy requirement of $5 million.[4]

---

[4]The minimal diversity requirement and the minimum number of putative class members requirement of 28 U.S.C. § 1332(d) are not at issue in this appeal. The disputed § 1332(d)(2) requirement in this case is whether the aggregate amount in controversy exceeds $5 million.

1. The Standard: What the Defendants are Required to Prove

The Supreme Court has long held that plaintiffs may limit their claims to avoid federal subject matter jurisdiction. *See, e.g.*, *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) ("If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove."). CAFA does not change the proposition that the plaintiff is the master of her own claim. *See, e.g.*, *Brill*, 427 F.3d at 449 (noting that "a removing defendant can't make the plaintiff's claim for him; as master of the case, the plaintiff may limit his claims (either substantive or financial) to keep the amount in controversy below the threshold").

There is, however, a broad good faith requirement in a plaintiff's complaint with respect to the amount in controversy. *See Red Cab*, 303 U.S. at 288; *Golden v. Golden*, 382 F.3d 348, 354-55 (3d Cir. 2004). Good faith in this context is entwined with the "legal certainty" test, so that a defendant will be able to remove the case to federal court by "show[ing] to a legal certainty that the amount in controversy exceeds the statutory minimum[.]" *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 398 (3d Cir. 2004).

In the context of CAFA's statutory minimum of $5 million, one court of appeals squarely addressed how the legal

11

certainty test plays out and one ducked the issue.[5]  The Seventh Circuit in *Brill* provides persuasive guidance to this Court on how we should apply the test in the present situation.  The *Brill* Court states that, because the plaintiff is the "master of the case" and "may limit his claims . . . to keep the amount in controversy below the threshold," the removing party must "show not only what the stakes of the litigation could be, but also what they are given the plaintiff's actual demands."  *Brill*, 427 F.3d at 449.  Because "the complaint may be silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy," "[a] defendant's notice of removal then serves the same function as the complaint would in a suit filed in federal court."  *Id*.

---

[5]In *Abrego Abrego*, the Ninth Circuit recognized that this test usually applies in the reverse scenario where a plaintiff alleges damages *in excess* of the federal statutory minimum, so that "remand is warranted only if it appears to a 'legal certainty' that the claim is actually for less than the jurisdictional minimum." 443 F.3d at 683 n.8.  However, "[i]f the complaint alleges damages of less than the jurisdictional amount, 'more difficult problems are presented'."  *Id*. (quoting 14C Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE § 3725 at 84).  The Ninth Circuit avoided the issue of how the legal certainty test would apply when the plaintiff alleges an amount below the statutory minimum because the plaintiffs did not allege a specific damage amount.

12

*Brill* and *Samuel-Bassett* provide three main instructions to this Court in the present case: 1) The party wishing to establish subject matter jurisdiction has the burden to prove to a legal certainty that the amount in controversy exceeds the statutory threshold; 2) A plaintiff, if permitted by state laws, may limit her monetary claims to avoid the amount in controversy threshold; and 3) Even if a plaintiff states that her claims fall below the threshold, this Court must look to see if the plaintiff's actual monetary demands in the aggregate exceed the threshold, irrespective of whether the plaintiff states that the demands do not. Key to the present matter is that the plaintiff's pleadings are not dispositive under the legal certainty test. This Court's task is to examine not just the dollar figure offered by the plaintiff but also her actual legal claims.

## 2. The Application of the Standard

If this court had all the information available to make such a determination, our conclusion here might be that the plaintiff's claim in all likelihood exceeds $5 million. Two factors, however, prevent us from agreeing with the defendants. First, the defendants bear the burden to prove to a legal certainty that the complaint exceeds the statutory amount in controversy requirement. Second, there are at least three inconclusive assumptions that the defendants rely upon to meet this burden.

First, the District Court accurately noted that the

13

defendants do not state what sort of punitive damages could be found when no harmful side effects are being alleged. The defendants argue in conclusory fashion that the plaintiff will certainly seek an award of millions of dollars in punitive damages. The defendants then cite this Court's decision in *Golden v. Golden*, 382 F.3d 348 (3d Cir. 2004), for the proposition that a demand for punitive damages will generally satisfy the amount in controversy requirement because it cannot be said to a legal certainty that the value of the plaintiff's claim is below the statutory minimum. This reliance on *Golden* is misplaced. The plaintiffs in *Golden* did not limit their damages as the plaintiff here ostensibly did. Moreover, it was the plaintiffs in *Golden* who sought federal jurisdiction under 28 U.S.C. § 1332. Finally, the defendants simply failed to prove what possible exposure existed with respect to punitive damages so as to satisfy any portion of the $5 million amount in controversy requirement.

Second, the defendants do not provide information about how much profit from New Jersey sales of StriVectin-SD would be eligible for disgorgement. The defendants respond by arguing that this class action will seek disgorgement of the profits from the nationwide sales of StriVectin-SD rather than just the New Jersey profits. To this end, the defendants submitted an affidavit by Ted J. Galovan, the Chief Financial Officer for Basic Research LLC, one of the defendants in the case. The Galovan Affidavit states that disgorgement from nationwide sales will easily exceed the $5 million amount in

14

controversy requirement.

The plaintiff's initial complaint is at least ambiguous as to whether disgorgement applies to nationwide profits or New Jersey profits. As the defendants note, the plaintiff did not explicitly limit the disgorgement of profits demand to New Jersey sales rather than nationwide sales until her remand reply brief. However, the plaintiff has explicitly limited her claim to disgorgement as a restitutionary remedy, so that the type of disgorgement of profits sought by Morgan cannot extend any further than profits derived directly from sales of StriVectin-SD to the New Jersey class members. *See also Tull v. United States*, 481 U.S. 412, 424 (1987) (stating that "[a]n action for disgorgement of improper profits is ... a remedy only for restitution"). Based on these considerations, and without stepping into a larger discussion about potential differences between disgorgement and restitution, we are satisfied that disgorgement in the context of this case only applies to profits earned by sales to class members.

Third, but least damaging to the defendants' case, is that, with respect to compensatory damages, the defendants do not provide "statistical sales information regarding the amount of StriVectin-SD sold in New Jersey." *Morgan v. Gay*, 2006 WL 2265302 at *5. Further, the defendants do not state the actual cost of StriVectin-SD. These two factors do not fatally harm the defendants' position because the plaintiff notes that the size of the class is at least 10,000, and "it is likely to be far

15

larger than that." While StriVectin-SD retailed for $135 for a six ounce tube on the defendants' website (www.strivectin.com), discounts are apparently available with the purchase of multiple tubes. However, neither the plaintiff nor the defendants provide information as to the amount of this discount.[6] The defendants want us to multiply 10,000 (the minimum size of the class as alleged by the plaintiff) by $405 (the cost of one bottle at full price trebled, because the plaintiff seeks treble damages). This total amounts to slightly over $4 million. This figure may be too large or too small, depending on both the actual class size and the actual cost of the product to class members. The defendants provide no evidence of the actual price paid for StriVectin-SD by class members.

In sum, the defendants did not carry their burden to show, to a legal certainty, that the amount in controversy

---

[6]There were two discounts available on the StriVectin website as of December 1, 2006: 1) $10 off when a consumer purchases two six-ounce bottles; and 2) once a consumer purchases the first $135 bottle, future bottles cost $108. *See* http://www.strivectin.com/sd/buy-strivectin.php. StriVectin also offers StriVectin-SD Eye Cream, with a 1.3 ounce tube retailing for $59. The website also offers a "100% Money Back Guarantee: If you are not totally satisfied with the significant decrease in the appearance of your existing wrinkles or stretch marks, simply return the unused portion within 30 days for a full, prompt refund, no questions asked!" *Id*.

exceeds the statutory minimum.[7]

## C.

The final issue that we address is whether the plaintiffs, in state court, will be able to recover more than $5 million in damages even with the express limitation in the complaint. New Jersey follows Federal Rule of Civil Procedure 54(c) with its own Rule 4:42-6, which states that "[e]very final judgment, except final judgments by default, shall grant the relief to which the party in whose favor it is rendered is entitled even though that party has not demanded such relief in the pleadings, provided the parties have been given an adequate opportunity to be heard as to the relief granted." N.J. Ct. R. 4:42-6. *See also* N.J. Ct. R. 4:5-2. As interpreted by the Supreme Court of New Jersey, "[i]t appears universally agreed that the effect of the Rule is to significantly curtail, if not totally neutralize, the binding effect of the

---

[7]We note in passing that the defendants' assertion that Sarah Morgan does not have the ability to limit damages of unnamed class members has no merit. The availability of opting out by unnamed class members assuages any concerns that Sarah Morgan's damage limitation harms these other class members. The potential class members in this case will be notified pursuant to New Jersey Court Rules 4:32-1(b)(3) and 4:32-2(b)(2). Under N.J. Ct. R. 4:32-2(b)(2)(E), "the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded."

specific demand for damages." *Lang v. Baker*, 501 A.2d 153, 158 (N.J. 1985) (per curiam).

Federal Rule of Civil Procedure 54(c) and its state analogs conflict with pre-54(c) cases like *Red Cab*, *supra*, which permit the plaintiff to be the master of her complaint. As the Fifth Circuit noted, *Red Cab*'s statement that a plaintiff could limit damages to avoid federal court "plainly was premised on the notion that the plaintiff would not be able to recover more in state court than what was alleged in the state court complaint." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1410 (5th Cir. 1995).

There is tension, then, between Rule 54(c)/Rule 4:42-6 and the *Red Cab* line of cases. The Supreme Court of New Jersey, in *Lang*, stated that, "[u]nder the Rule, a verdict in excess of the demand is not prohibited unless it would clearly prejudice the opposing party." 501 A.2d at 158. The text of the decision is ambiguous about whether "the Rule" refers to Fed. R. Civ. P. 54(c) or N.J. Ct. R. 4:42-6, but this ambiguity is of no moment because Rule 4:42-6 was patterned after Rule 54(c)–and *Lang*'s discussion of the two rules does not differentiate between them. To resolve this tension, and in light of *Lang*, we admonish that a verdict in excess of the demand could well be deemed prejudicial to the party that sought removal to federal court when the party seeking remand uses a damages-limitation provision to avoid federal

18

court.[8]

## V.

For these reasons, we will *affirm* the judgment of the District Court. The District Court properly placed the burden on the parties seeking removal to prove to a legal certainty that the amount in controversy exceeds the statutory minimum. The defendants in the present matter failed to carry this burden. We do caution, however, that the plaintiffs in state court should not be permitted to ostensibly limit their damages to avoid federal court only to receive an award in excess of the federal amount in controversy requirement.[9]

---

[8]On this point, we agree with the Fifth Circuit's statement in *De Aguilar* that "[t]hese new rules have created the potential for abusive manipulation by plaintiffs, who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading. Such manipulation is surely characterized as bad faith." *See De Aguilar*, 47 F.3d at 1410.

[9]We note the potential availability of judicial estoppel arguments by the defendants should the plaintiffs in the future change legal positions in an attempt to achieve an award in excess of $5 million. The Supreme Court has stated that "several factors typically inform the decision whether to apply that doctrine in a particular case: First, a party's later position

The plaintiff has made her choice, and the plaintiffs in state court who choose not to opt out of the class must live with it.

must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2000) (internal quotations and citations omitted); *United States v. Pelullo*, 399 F.3d 197, 222-23 (3d Cir. 2005); *McCurrie v. Town of Kearny*, 809 A.2d 789, 795 (N.J. 2002) (stating that "judicial estoppel is a doctrine designed to protect the integrity of the judicial process by not permitting a litigant to prevail on an issue and then to seek the reversal of that favorable ruling"); *State of New Jersey Dept. of Law & Public Safety v. Gonzalez*, 667 A.2d 684, 691 (N.J. 1995) (stating that judicial estoppel "bars a party to a legal proceeding from arguing a position inconsistent with one previously asserted") (internal quotation and citation omitted).