WILKINSON, Circuit Judge,
dissenting:
Petitioner put forth a prima facie case establishing that the damages at issue in this action meet the jurisdictional threshold under the CAFA. In response, respondent offered nothing to rebut petitioner’s claims; it merely charged that the claims *740 are too speculative. In accepting this argument, the majority conflates burdens of proof with burdens of production. Moreover, the majority’s holding — that petitioner has failed to meet its burden of proof despite presenting a prima facie case that respondent has not contradicted — is in some tension with circuit precedent in Strawn v. AT & T Mobility LLC, 580 F.3d 293 (4th Cir.2008). I therefore respectfully dissent.
I.
The party seeking removal in a CAFA case has the burden of alleging federal jurisdiction and establishing it if challenged. Strawn, 530 F.3d at 298. But once petitioner has set forth a prima facie case establishing jurisdiction, the onus is on respondent to offer something of its own. See id. at 298-99. Strawn held that the petitioner in that case had met its burden by identifying the number of class members (based on the terms of the respondent’s complaint) and by calculating the minimum statutory damages due each member of the class, where the respondent “offered nothing to suggest that the [figure put forth by the petitioner] is not an accurate number.” Id. The court thus held for the petitioner based on the petitioner’s calculations and the facts presented in the complaint, even though respondent’s counsel even went so far as to stipulate that they would not accept an award over $5 million. See id. at 295, 299.
The case before us is strikingly similar. NVR, the petitioner here, met its initial burden by offering a prima facie case based on the terms of respondents’ complaint and petitioner’s own calculations of overtime pay. In the complaint, the class action plaintiffs (respondents here) raised a statutory claim for overtime pay that had a statute of limitations period of two years. They also asserted a breach of contract claim that reached back three years. Both claims sought overtime pay of one-and-a-half times the regular rate of pay; further, the statutory claim asserts that petitioner acted willfully, which under North Carolina law would allow a court to award double damages. See 28 U.S.C. § 1332(d)(2) (excluding only “interest and costs” from the amount in controversy under the CAFA); N.C. Gen.Stat. §§ 95-25.22(al) (providing for the award of liquidated damages in an amount equal to the damages due). Finally, respondents claim attorneys’ fees, which are recoverable under North Carolina wage and hour laws. See N.C. GemStat. § 95 — 25.22(d); see also 28 U.S.C. § 1332(d)(2). Based on these claims, petitioner estimates that respondents will seek damages of $5,352,000 on the statutory claim alone, and that the total amount of damages could exceed $6 million even without attorneys’ fees.
To support its calculations, petitioner submitted a declaration from its payroll director, Dennis Littell. Mr. Littell reviewed the payroll records of the relevant category of employees, Sales and Marketing Representatives, for two time periods: August 2004 to July 2005 (for the breach of contract claim), and August 2005 to July 2007 (for the statutory claim). Based on this review, Mr. Littell computed the average annual compensation paid to the employees and the number of person-months worked during each time period. NVR then looked at respondents’ claims in this and other proceedings and estimated that respondents would claim they had worked an average of five overtime hours per week. This figure yielded petitioner’s estimates of respondents’ total damages.
The majority does not suggest that someone other than the payroll director would be better fit to put forth this information. It does not suggest what information petitioner could offer that would meet its burden under the CAFA. Although petitioner bears the ultimate burden of prov *741 ing by a preponderance of the evidence that the jurisdictional amount is in controversy, it need not produce reams of personnel records simply to present a prima facie case. To require more would lead to voluminous discovery requests and document production at the preliminary stages of what is itself a preliminary jurisdictional issue. Encouraging this sort of deluge adds more litigiousness to already litigious class action undertakings.
Moreover, the five-hour estimate is not so speculative as to not even require a response from respondents. The affirmation of Patrick Tracy, the named plaintiff in a parallel proceeding in the Western District of New York, states that “in many weeks [Tracy] worked beyond the model home open hours on [his] scheduled days” and that he also came to work on his days off. (JA 99.) He not only refers to working four 55-hour weeks in a month (JA 96), but states that he “frequently worked over forty hours in a week” because of his extra hours during the week and “the extra hours” on his days off. (JA 100) Therefore, Tracy’s statements buttress the petitioner’s argument that an estimate of five hours per week is not only a credible estimate, but a very conservative one. And there is no reason to believe that Tracy’s experience in New York differs from that of SMRs in North Carolina: the named plaintiffs in the North Carolina action are part of the class that Tracy represents, and respondents have stated that NVR kept “very regimented policies” and followed the same sales model “at all of its locations.” Pi’s Mem. of Law in Support of Mot. for Class Certification, Tracy v. NVR, Inc., No. 04-CV-06541 (W.D.N.Y. filed on Jan. 11, 2008).
Finally, the majority acknowledges that respondents would reach the jurisdictional amount if they claimed just four hours per week of overtime. Maj. Op. at 737. Four hours overtime per week is precious little to seek in a class action suit brought to recover overtime pay. And petitioners can reach this jurisdictional threshold without counting attorneys’ fees and the value of injunctive relief, which the majority notes constitute part of the amount in controversy. See Maj. Op. at 736-37, n. 12.
These calculations, along with the Littell Declaration, make up petitioner’s prima facie case and put a burden on the respondents to offer something in response. See Strawn, 530 F.3d at 299. If the five-hour estimate was indeed too speculative or inaccurate, it would make the response even easier to tender. The respondents, who are in possession of all information regarding their pay claims, could shoot down an inaccurate estimate without breaking a sweat. But then respondents have never claimed that they are requesting less than $5 million in damages. In fact, respondents have been litigating class action overtime pay cases against petitioner since 2004, but have passed on every opportunity to submit an affidavit or even make a declaration as to the likely amount of damages they will claim. See, e.g., Tracy v. NVR, Inc., No. 6:04-06541, 2004 WL 3213031 (W.D.N.Y. filed on Oct. 29, 2004). To be sure, respondents may be under no obligation to do so, but the court is likewise under no obligation to relieve them of the consequences of inaction.
Requiring some sort of minimal response in no way shifts the ultimate burden of proof to respondents, but recognizes that respondents have some modest role to play in making the adversary process function. In ruling otherwise, the majority confuses the burden of proof with the burden of production when it states that respondents “are under no obligation to put forth any evidence.” Maj. Op. at 737. Our cases in the Title VII context are instructive. As we noted when discussing the McDonnell Douglas framework in Burns v. AAF-McQuay, Inc., 96 F.3d 728, *742 731 (4th Cir.1996), the burden of proof throughout a Title VII proceeding remains with the plaintiff. But once the plaintiff puts forth a prima facie case of discrimination, the burden of production shifts to the defendant to show a nondiscriminatory motive for its actions. Burns, 96 F.3d at 731-32.
Similarly, in the CAFA context, the burden of proof remains with the party seeking to invoke federal jurisdiction — typically, the class action defendant (petitioner here). See Strawn, 530 F.3d at 297-98. But once petitioner has put forth credible evidence on the jurisdictional question, the burden of production shifts to the respondent to offer something in response. E.g., Strawn, 530 F.3d at 298-99. Thus, the burden of production may switch without diminishing or reallocating in any way the burden of proof. The majority seems to recognize this burden-shifting when it notes that it “accept[s] NVR’s evidence on average annual compensation and the number of person-months worked ... because [respondents] have offered no contradictory evidence.” Maj. Op. at 738.
Finally, not requiring any response from respondents lets them have their cake and eat it too — avoiding federal jurisdiction without being bound by any declaration of damages that might haunt them in state court. See, e.g., Morgan v. Gay, 471 F.3d 469, 477 (3d Cir.2006) (“[P]laintiffs in state court should not be permitted to ostensibly limit their damages to avoid federal court only to receive an award in excess of the federal amount in controversy requirement.”). Further, not requiring even so much as a response invites a game of judicial ping-pong. At this point, the case will proceed with discovery in state court, but petitioner will surely renew its notice of removal if respondents later claim, as no doubt they will, over $5 million in damages. See 28 U.S.C. § 1446(b) (stating that the defendant may remove a case from state court by filing a notice of removal within 30 days of receiving an amended pleading or other document indicating that federal jurisdiction is proper); see also 28 U.S.C. § 1453(b) (noting that the one-year limitation on removals under § 1446 does not apply to class actions). The parties will then be litigating this case once again in federal court.
I recognize that CAFA cases may turn on questions of state law and there is a policy argument, with which I have some sympathy, for having these cases resolved at the state level. But we are not at liberty to assign cases to forums where we, not Congress, think they belong. Congress has enacted CAFA and no one is claiming that CAFA is beyond the congressional power to establish the jurisdiction of the federal courts. Here, petitioner offered a prima facie case for federal jurisdiction and respondents offered absolutely nothing in response. Straum does not permit this very situation, and it gives rise to gaming the system. I would reverse the judgment and let the case proceed in district court.