**PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1415
_____

ERIE INSURANCE EXCHANGE,
an unincorporated association; JOSEPH S. SULLIVAN;
ANITA SULLIVAN; PATRICIA R. BELTZ;
JENNA L. DEBORD


v.

ERIE INDEMNITY COMPANY,
                                        Appellant
_____

On Appeal from the District Court
for the Western District of Pennsylvania
(No. 2:12-cv-1205)
District Judge: Honorable Terrence F. McVerry
_____

Argued March 18, 2013

Before: FUENTES, CHAGARES and ROTH, *Circuit Judges*

(Opinion Filed: June 28, 2013)

Steven B. Feirson **[ARGUED]**
Michael L. Kichline
Donald C. Le Gower
Dechert LLP
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104-2808

Ira L. Podheiser
Burns White LLC
Four Northshore Center
106 Isabella Street
Pittsburg, PA 15212

     *Counsel for Appellant, Erie Indemnity Company*

William M. Radcliffe, III **[ARGUED]**
William M. Martin
Radcliffe & DeHaas LLP
2 West Main Street, Suite 700
Uniontown, PA 15401

     *Counsel for Appellees, Erie Insurance Exchange,*
     *Joseph S. Sullivan, Patricia R. Beltz, Jenna L. Debord,*
     *and Anita Sullivan*

---

OPINION OF THE COURT

---

FUENTES, *Circuit Judge*:

We are asked to determine whether this case is a class action that belongs in federal court under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"). Erie Insurance Exchange ("Exchange") filed suit against its attorney-in-fact, Erie Indemnity Co. ("Indemnity"), in Pennsylvania state court, alleging that Indemnity misappropriated over $300 million in fees that belonged to Exchange. The complaint was filed for Exchange "by" certain of its members as *trustees ad litem*, and by those members "on behalf of" all other members. Contending that the words "on behalf of" convert this case into a class action, Indemnity removed the case to federal court but the District Court remanded the case to state court on Exchange's motion. Because this case was brought under state rules that bear no resemblance to Rule 23 in that they allow for suits by entities, not a conglomerate of individuals, we conclude that it does not meet the statutory definition of "class action." We therefore affirm the District Court's order.

## I.

### A.     Factual Background

The parties do not dispute that Exchange is a reciprocal insurance exchange organized under Pennsylvania law. Since at least 1921, Pennsylvania has authorized the aggregation of resources for the purpose of covering most losses that may otherwise be insured against under Pennsylvania's laws. *See* 40 PA. STAT. ANN. § 961 (2012). Thus, Exchange's members purchase insurance policies and receive indemnification for losses out of Exchange's pool of funds. The pool is comprised of fees, including insurance premiums and other charges, paid by Exchange's members.

3

Importantly, the legal association of these individuals exists independent of this suit.

The original complaint, filed in the Court of Common Pleas of Fayette County, Pennsylvania on August 1, 2012 (the "Complaint"), alleges that Exchange is owned by its subscribers and has no independent officers or governing body. It also alleges that Indemnity is a public corporation organized under Pennsylvania law, and that it serves as attorney-in-fact for Exchange. According to the Complaint, to receive insurance, each Exchange member is required to sign an identical agreement appointing Indemnity as attorney-in-fact on behalf of Exchange (the "Subscriber's Agreement"). The Subscriber's Agreement gives Indemnity broad powers to "manage and conduct the business and affairs of" Exchange, including the ability to issue policies for Exchange, collect premiums, and invest Exchange's funds. Joint Appendix ("J.A.") 35. In exchange for these services, Indemnity is permitted to retain up to 25% of all premiums written or assumed by Exchange. The balance of the premiums is to be used for insurance losses and other operational costs of Exchange and may be distributed to its members as dividends at the discretion of Indemnity.

The Complaint alleges that members of Exchange who pay their insurance premiums in installments must also pay service charges, and that members are also subject to late payment and policy reinstatement fees. The Complaint also claims that, beginning in 1997, Indemnity began to retain for itself the service charges that certain members paid to Exchange, which monies belonged to Exchange, and that, beginning in 2008, Indemnity misappropriated the late

4

payment and policy reinstatement fees, totaling over $300 million dollars.

### B.    Procedural History

The Complaint names Exchange as plaintiff, and states that Exchange brings the suit "by" four of its individual members as "trustees ad litem" ("Individual Members").  J.A. 28.  Further, each Individual Member is said to bring the suit "on behalf of all members of Exchange."  Compl. ¶¶ 1-4. The action was purportedly brought "pursuant to Pa. R. Civ. P. 2152," *id.* ¶ 4, which provides that "[a]n action prosecuted by an association shall be prosecuted in the name of a member or members thereof as trustees ad litem for such association.  An action so prosecuted shall be entitled 'X Association by A and B, Trustees ad Litem' against the party defendant."  Pa. R. Civ. P. 2152.

The Complaint pleads three counts under state law: (1) breach of contract, alleging that the "plaintiffs herein sustained damages" as a result of Indemnity's breach of the Subscriber's Agreement in retaining services charges, and seeking relief "on behalf of all members of" Exchange; (2) breach of fiduciary duty, also seeking relief on behalf of the members of Exchange; and (3) "equity," requesting relief in the amount of misappropriated funds "on behalf of Exchange."  *Id.* ¶¶ 30-47.

Indemnity filed a notice of removal, arguing that this case constitutes a "class action within the meaning of the Class Action Fairness Act."  J.A. 21.  After the case was transferred to the District Court for the Western District of

Pennsylvania, plaintiffs moved to remand, arguing that this case does not constitute a "class action" as that term is used in CAFA, and that, in the alternative, CAFA's diversity of citizenship requirement is not met. Indemnity responded that, among other arguments, the suit was improperly brought under Rule 2152 of the Pennsylvania Rules of Civil Procedure. As noted, Rule 2152 sets forth how suits on behalf of "associations" are to be prosecuted under Pennsylvania law. However, the Pennsylvania rules define "associations" to exclude entities that are "corporations or similar entit[ies]," such as "insurance association[s] or exchange[s]." Pa. R. Civ. P. 2176; *see also* Pa. R. Civ. P. 2151. Pennsylvania law provides that actions on behalf of such "a corporation or similar entity" instead "shall be prosecuted . . . in its corporate name." Pa. R. Civ. P. 2177. Thus, the Original Complaint would not seem to fit under Rule 2152.

An amended complaint was filed while the motion for remand was pending (the "Amended Complaint"). The Amended Complaint contains no references to Rule 2152, no longer requests relief "on behalf of" individual members of Exchange, and asserts that it is brought by individual members "on behalf of Exchange." J.A. 72, ¶¶ 1-4.

In October 2012, the District Court granted plaintiffs' motion to remand the case, concluding that it does not constitute a "class action" under CAFA. Indemnity filed a timely petition for leave to appeal, which we granted on February 14, 2013.

While the petition for appeal was pending, three of the four Individual Members filed a lawsuit in the District Court

for the Western District of Pennsylvania (the "Federal Lawsuit"). The complaint in that case stated two alternative causes of action—one styled as a class action by the individual members on behalf of all the members of Exchange, and the other a non-class action on behalf of Exchange by its members. *See* Compl. at 2, *Erie Ins. Exch. v. Stover*, No. 1:13-cv-37 (W.D. Pa. Feb. 6, 2013). The Federal Lawsuit names as defendants certain trustees of Exchange, allegedly appointed by Indemnity and responsible for permitting Indemnity to take funds from Exchange, the same funds that are at issue in this lawsuit.

## II.

CAFA grants us appellate jurisdiction to review the District Court's remand order. 28 U.S.C. § 1453(c). But the basic question we must resolve is whether a federal court has subject matter jurisdiction to hear this case in the first instance. Indemnity, as the party seeking removal, bears the burden of establishing that federal subject matter jurisdiction exists. *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009). To evaluate whether removal is proper, we generally focus on the allegations in the Complaint and the notice of removal. *Id.*[1]

### A.

CAFA gives federal courts subject matter jurisdiction over "class actions" if the suit meets certain requirements,

---

[1] We review issues of subject matter jurisdiction, and the statutory interpretation issues raised in this case, *de novo*. *Morgan v. Gay*, 471 F.3d 469, 472 (3d Cir. 2006).

7

such as involving an amount in controversy over $5 million in the aggregate and involving at least one plaintiff who is a resident of a jurisdiction different than that of at least one defendant. 28 U.S.C. § 1332(d)(2)(A). The principal dispute here, however, is whether this case even constitutes a "class action."

We begin, of course, with CAFA's language, which defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Like the other Courts of Appeals to have construed CAFA's definition of "class action," we find "no ambiguity" in the text of the law and Indemnity points to none. *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 848 (9th Cir. 2011). The statute directs us to inquire whether this action was brought under a "state statute or rule" that is "similar" to Rule 23 or, in other words, "whether the state statute authorizes the suit 'as a class action.'" *Id.*[2]

Indemnity has made no attempt to argue that this dispute meets the statutory definition of class action. Notably, Indemnity does not contend that the Complaint was

---

[2] The relevant portions of Rule 23 provide that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if" numerosity, commonality, typicality, and adequacy of representation are met, and if the class meets other requirements and is certified by the court as a class after following certain notice procedures. Fed. R. Civ. P. 23(a)-(c).

filed pursuant to Rule 23 of the Federal Rules of Civil Procedure, or under any state statute or rule that is "similar" to Rule 23 or that otherwise authorizes an action to be brought by a representative as a class action. Nor could it. As noted, this action was originally brought pursuant to Rule 2152 of the Pennsylvania Rules of Civil Procedure ("Rule 2152"), which allows suits on behalf of an unincorporated association to be prosecuted by its members.[3] But Rule 2152 contains none of the defining characteristics of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). It does not, for example, provide for class certification mechanisms, Fed. R. Civ. P. 23(c)(1), list requirements such as numerosity or commonality that a suit must meet to constitute a class action, Fed. R. Civ. P. 23(a)-(b),[4] or specify the form and substance of notice that must be given to absent class members, Fed. R. Civ. P. 23(c)(2). Nor does Rule 2152 permit individual class members to opt-out or provide for the appointment of a lead plaintiff or class counsel. Far from "authorizing an action to be brought by [a] representative person[] as a class," 28

---

[3] As noted, the Amended Complaint removed references to Rule 2152 and purported to be brought under Rule 2177. But, as Indemnity points out, jurisdiction is analyzed "as of the time [the case] was filed in state court." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013); *see also Kaufman*, 561 F.3d at 152. We therefore consider the jurisdictional inquiry by reference to the Original Complaint, and do not consider the Amended Complaint.

[4] Rather than contain a numerosity requirement, Rule 2152 is not limited to suits involving associations of a certain size. It appears that an action by an association with, say, two members, may be instituted under Rule 2152.

9

U.S.C. § 1332(d)(1)(B), Rule 2152 merely authorizes suits by representatives *on behalf of an unincorporated association*. *See* Pa. R. Civ. P. 2152.  Indeed, to the extent we have interpreted Pennsylvania law on the matter, we have held that suits by members of an unincorporated association (such as those contemplated by Rule 2152) may *not* be brought as a class action.  *See Underwood v. Maloney*, 256 F.2d 334, 337 (3d Cir. 1958) ("Pennsylvania has forbidden a suit by or against an unincorporated association to be maintained as a class action.").

Indemnity and the District Court noted that, under Pennsylvania law, Rule 2152 is not the proper vehicle for a lawsuit by an insurance exchange.  The District Court explained that a suit by such entity must be prosecuted under Rule 2177 of the Pennsylvania Rules of Civil Procedure ("Rule 2177"), which requires suits by insurance exchanges to be filed "in [their] corporate name."  Pa. R. Civ. P. 2177.  This may be so, but despite Rule 2176's exclusion of insurance exchanges from  "unincorporated associations," there is Pennsylvania authority permitting a suit by an insurance exchange to be prosecuted in the same way suits by other unincorporated associations are prosecuted under Rule 2152, i.e. "by some of the members in their own names on behalf of or as representing all."  *Barford v. Beaner Elec. Co.*, 11 Pa. D. & C. 51, 55 (Pa. Ct. Common Pleas 1927).  Thus, under either Rule, a suit by Exchange is properly understood as a suit by one entity, not by "a conglomerate of individuals."  *Long v. Sakleson*, 195 A. 416, 420 (Pa. 1937).  Moreover, Rule 2177 is even less like Rule 23 in that it contains none of Rule 23's class-related requirements, and, unlike Rule 2152, does not even explicitly contemplate a suit filed by a member "on behalf of" an association.

10

In any event, we need not resolve the state-law question of whether Rule 2152 or Rule 2177 provides the proper basis for filing a suit by an insurance exchange, a question "we only see through *Erie*'s glass darkly." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 220 (2d Cir. 2013). Plaintiffs are the masters of their complaints and are "free to choose the statutory provisions under which they will bring their claims." *Id.* at 216 n.7; *see also Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013). If the case is procedurally unsound under Pennsylvania's rules, the Commonwealth's courts are best suited to correct the problem. We will not rewrite the Complaint to create jurisdiction under the pretense of correcting a state-law error.

By contrast to these rules, Rules 1701 through 1704 of the Pennsylvania Rules of Civil Procedure contain specific requirements for a lawsuit to be brought as a class action, many of which mirror the requirements of Rule 23. *See* Pa. R. Civ. P. 1702 (listing numerosity, commonality, and typicality requirements of Pennsylvania class actions); Pa. R. Civ. P. 1704 (requiring separate heading for "Class Action allegations"). There is no contention that this case was brought under such rules, other than Indemnity's attempt to equate, without citation to any authority, a suit filed "on behalf of all members of Exchange" to a class suit under Rule 1701. *See* Appellant's Br. at 10 n.4. Our own precedent belies Indemnity's attempt to characterize a suit brought "on behalf of" members of an association as a class action. *See*

11

*Underwood*, 256 F.2d at 337.[5]  Plain and simple, this is a suit by an entity, not a class of individuals.

Our holding does not require "a formalistic search through the pages of the complaint for magic words," as Indemnity suggests.  Appellant's Br. at 14 n.7 (citing *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009)).  Instead, as per Congress's command, we reach our holding by looking to the rule under which a case was filed.  "[N]o amount of piercing the pleadings will change the statute or rule under which the case is filed.  If this is a formalistic outcome, it is a formalism dictated by Congress." *In re Vioxx Prods. Liab. Litig.*, 843 F. Supp. 2d 654, 664 (E.D. La. 2012).

**B.**

Unable to meet the clear statutory definition of "class action," Indemnity resorts to a series of extra-textual arguments and to a complicated analysis of the Complaint, in an attempt to meet its burden of establishing removal by convincing us that "there is more to this case than meets the eye." *Purdue*, 704 F.3d at 217.  We are not persuaded.

Indemnity points to CAFA's legislative history, which it contends dictates that CAFA's application of class action "should not be confined solely to lawsuits that are labeled 'class actions.'"  Appellant's Br. at 12 (citing S. Rep. No.

---

[5]  Indemnity's only attempt to come to terms with the language of the statute is in a footnote, where Indemnity labels as "restrictive" an analysis focused on CAFA's textual definition of "class action."  *See* Appellant's Br. at 10 n.4.  We disagree with that characterization.

109-14, at 35 (2005)). But this general legislative statement does nothing to tip the scales in Indemnity's favor. It neither modifies the statutory command of which suits *are* to be considered class actions, nor provides a test by which to answer the question of whether a suit constitutes a "class action." We do not quarrel with the view that "class actions" are not only cases labeled as such, but our holding does not turn on the fact that that label is missing from the Complaint. Rather, it turns on the fact that this case was not brought pursuant to any rule sufficiently similar to Rule 23, and that Indemnity has not pointed to any rule that would even permit a suit by an exchange through its members to be brought as a class action under Pennsylvania law. *Cf. Chimei*, 659 F.3d at 849-50 (rejecting the argument that "liberally" defining "class action" required finding that a suit that had some resemblance to a class action was a CAFA "class action").[6]

In a related argument, Indemnity asks that we look at the "substance" of the allegations in the Complaint and ignore "formalistic" labels to determine whether removal is proper. Appellant's Br. at 9-10. This argument is most curious, as with its very next argument Indemnity urges that we focus

---

[6] Our dissenting colleague similarly relies extensively on CAFA's legislative history and suggests that our decision "contravenes Congress's intent" in enacting that law. Dissent at 1, 2, 7, 9. But CAFA's legislative history is particularly suspect given that it represents the views of only a handful of the legislators voting for the law. *See Brill v. Countrywide Home Loans*, 427 F.3d 446, 448 (7th Cir. 2005) (explaining that Senate Report was signed by only thirteen of 82 senators voting for CAFA and thus has less "force than an opinion poll of legislators").

13

narrowly on Complaint's use of the words "on behalf of," and on the differences between the prayer for relief in Counts One and Two compared to that in Count Three to conclude that this case really is a class action. *Id.* at 10-11. Indemnity even suggests that the use of the plural of "plaintiff" means that this is a representative suit. *Id.* at 11. But Indemnity cannot invoke subject matter jurisdiction by cherry-picking key words from a complaint any more than a plaintiff can artificially deprive a federal court of subject matter jurisdiction by artful pleading or labeling. Failing to affix "class action" to a pleading can no more deprive us of jurisdiction than using the words "on behalf of," or the plural of "plaintiff," can magically confer it.

Finally, Indemnity notes that "Exchange . . . is not a party to" the Subscriber's Agreements that form the basis of the claims in the Complaint. *Id.* at 10. Presumably, the thrust of this argument is that Exchange's members are the "real party in interest" to this suit. But, this confuses the state-law question of who may properly bring this case with the question of whether this case was filed pursuant to a rule sufficiently similar to Rule 23. And, in any event, this argument proves too much. As noted, Exchange is an unincorporated entity with no management or directors. Its only ability to contract, or otherwise perform legal acts, is either through Indemnity itself or through its members. In other words, the fact that each individual member had to sign a Subscriber's Agreement is inherent in the nature of an entity such as Exchange. If Indemnity's arguments were accepted, all suits by an insurance exchange against its attorney-in-fact—necessarily prosecuted by individual members—will always be treated as class actions. We know of nothing in Pennsylvania's rules that evince any intent to reach this

14

strange result. To the contrary, Pennsylvania law suggests that such suits should not be considered to be class actions. *See, e.g.*, Pa. R. Civ. P. 2177; *Long*, 195 A. at 421 (suit against an insurance exchange is not against "a conglomerate of individuals").[7]

Far from helping Indemnity, its "substance of the claims" arguments convince us that this case is not properly viewed as a class action. Even if this case were viewed as a suit by all of Exchange's members against Indemnity on Exchange's behalf, it would still bear little resemblance to a Rule 23 action. The group of individuals that comprise Exchange exists to pool resources and buy insurance and will continue to exist beyond the life of this suit. By contrast, a "class" in a class action is a group of individuals whose legal association normally begins and ends with the lawsuit, which is not the case here. Nor do we see any indication that members of Exchange can opt in or out of the suit (which will bind Exchange), or that they are entitled to notice, an opportunity to object, or to be appointed lead plaintiff.

As for whatever recovery may be obtained at the conclusion of this litigation, Indemnity does not contend that it belongs to Exchange's individual members. To the contrary, the Complaint alleges that the misappropriated

_____

[7] CAFA itself evinces an intent that suits by unincorporated associations be treated like suits by corporations in that the citizenship of the association for diversity purposes is determined by the entity's principal place of business and not by the citizenship of its members. *See* 28 U.S.C. § 1332(d)(10).

funds were paid to Exchange. *See* Compl. ¶¶ 24, 25 (alleging that Indemnity retained moneys "previously received by Exchange"). It is true that Exchange's members will indirectly benefit from any recovery that goes to Exchange's pool of assets. But that fact does not make this case a class action any more than a lawsuit by, say, a regular corporation is a class action simply because its shareholders indirectly benefit from the corporation's recovery in the suit.

Accordingly, Indemnity's additional arguments, which have already taken us far afield from a straightforward application of the unambiguous definition of class action to this case, must be rejected.[8]

## C.

Finally, Indemnity invokes a general notion of estoppel and argues that because the subsequently-filed Federal Lawsuit arises "out of the same nucleus of operative fact" as this action, we should conclude that it constitutes an attempt at "forum manipulation," Appellant's Br. at 17, and therefore keep this case in federal court. There are two fundamental problems with this argument.

First, it ignores the axiomatic principle that in deciding a motion for remand the proper inquiry is whether

---

[8] In light of our conclusion that Indemnity has failed to meet its threshold burden of establishing that this case is a "class action," we need not reach Exchange's argument that minimal diversity of citizenship is defeated. *See* 28 U.S.C. § 1332(d)(2). However, as stated, CAFA itself suggests that this argument is correct. *See supra* n.6.

16

jurisdiction existed "as of the time [the case] was filed in state court." *Knowles*, 133 S. Ct. at 1349. Indemnity itself recognizes this principle in the context of attacking the District Court's analysis of the Amended Complaint. *See* Appellant's Br. at 15. We are not permitted, by CAFA or otherwise, to hold that the subsequent filing of a lawsuit may create subject matter jurisdiction over a previously filed suit, where no jurisdiction existed in the first place.

Second, Indemnity's argument confuses questions regarding Exchange's capacity to sue with questions of subject matter jurisdiction. "[I]ssues pertaining to the capacity to sue . . . are deserving of consideration only after the jurisdiction of the federal court has been firmly established." *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n.*, 554 F.2d 1254, 1260 (3d Cir. 1977). The effect of allegedly adopting differing positions regarding capacity to sue will be addressed, if necessary, by either the state court handling this case or the federal court handling the Federal Lawsuit, as the case may be.

The cases that Indemnity relies on demonstrate that doctrines such as judicial estoppel and *res judicata* equip courts to address situations in which plaintiffs file multiple lawsuits or adopt contradictory litigation postures. *See, e.g.*, *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 551 (3d Cir. 2006). But federal courts are courts of limited powers, and those remedies do not permit us to create subject matter jurisdiction. *See, e.g.*, *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (explaining that "no action of the parties can confer" jurisdiction because "principles of estoppel do not apply" to the question of whether jurisdiction exists). We therefore

decline to apply equitable principles in a way that would impermissibly expand federal judicial power in violation of Article III.[9]

## III.

This case was not filed under any rule that contemplates class proceedings, and Indemnity does not contend otherwise. It therefore fails to meet the statutory definition of "class action" and may not properly be removed under CAFA. Even after accepting Indemnity's invitation to perform an analysis beyond what CAFA's text requires, and to wade through the complaint in hopes of concluding that something else is afoot, we have failed to uncover any evidence that this case is really a class action wolf dressed in sheep's clothing.

The District Court's judgment is AFFIRMED.

---

[9] Nor will we "fashion a rule" that directs consolidation of this case with the Federal Lawsuit. *See* Appellant's Br. at 19. Aside from the fact that such remedy would result in our exercising jurisdiction contrary to the state court's authority, this case is nothing like *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405 (6th Cir. 2008), on which Indemnity relies for its proposed consolidation rule. In *Freeman*, the Court found that the lawsuit was artificially separated into several state court cases for the explicit purposes of avoiding "federal jurisdiction." *Id.* at 407. Here, by contrast, the separate action was brought not in state court but in federal court, undermining any contention that it was brought to avoid "federal jurisdiction."

*Erie Insurance Exchange et al. v. Erie Indemnity Co.*

No. 13-1415

---

ROTH, <u>Circuit Judge</u>, dissenting:

I respectfully dissent because I believe that the Complaint is a class action for purposes of CAFA jurisdiction. CAFA's primary objective is to ensure "[f]ederal court consideration of interstate cases of national importance." *Standard Fire Ins. Co. v. Knowles*, --- U.S. ----, 133 S. Ct. 1345, 1350 (2013) (quoting Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2(b)(2), 119 Stat. 4). The majority's requirement that a class action must be brought under Rule 23 or a similar state statute or rule that explicitly authorizes a class action goes too far and contravenes Congress's intent that "lawsuits that resemble a purported class action should be considered class actions." S. Rep. No. 109-14, at 35 (2005).

I would hold that a civil suit is a class action for purposes of CAFA jurisdiction when it pleads facts that would fulfill the essential elements of a class action – numerosity, commonality, typicality, and adequacy of representation. Simply put, if it quacks like a class action, it is a class action. The Complaint here quacks. It pleads facts that would satisfy the elements of a class action; therefore, it is a class action under CAFA. The District Court erred in remanding this case back to state court.

1

The basis for my conviction that the District Court erred goes back to Congress's reason for enacting CAFA. Congress wanted to "expand substantially federal court jurisdiction over class actions." S. Rep. No. 109-14, at 43 (2005); *see also Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 148-49 (3d Cir. 2009). The Senate Committee Report on CAFA explains that Congress was concerned that class actions were too often excluded from federal court. S. Rep. No. 109-14, at 4 (2005). This led to the adjudication of these cases in state courts, which inconsistently applied the rules governing class actions and inadequately supervised litigation procedures and proposed settlements. *Id.* Congress was frustrated that lawyers could "'game' the procedural rules and keep nationwide or multi-state class actions in state courts." *Id.* This was especially troubling since class actions strongly implicate concerns about judicial integrity and interstate commerce. *See id.* at 8.

Consequently, CAFA "places the determination of more interstate class action lawsuits in the proper forum – the federal courts." *Id.* at 4. Class actions "usually involve the most people, most money, and most interstate commerce issues" and "also usually involve issues [with] nationwide implications," so they are "precisely the kind of cases that should be heard in federal court." *Id.* at 53. CAFA lists as one of its purposes to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction," § 2(b)(2), and "the overall intent of [CAFA's] provisions is to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications." S. Rep. No. 109-14, at 35 (2005). Congress's desire that federal courts have broad jurisdictional power to

2

hear class actions cannot be ignored when interpreting the plain language of CAFA.

**A.**

While the majority accuses Indemnity of cherry-picking words to show that this is a class action, *see* Majority at 14, a close reading of the whole Complaint reveals that it seeks relief for individuals and pleads facts that would support the four prerequisites of a class action under Rule 23.[1] First of all, as the Complaint indicates, this is an interstate case of national importance. Exchange's more than two million subscribers hail from ten states and the District of Columbia and, pursuant to their membership, enter into contracts for insurance with and receive dividends from Exchange throughout that geographic territory. Indemnity, a public corporation, manages and conducts Exchange's business affairs by, *inter alia*, issuing policies, collecting premiums, and investing Exchange's funds, activities which certainly occur across several states. This lawsuit, which challenges Indemnity's conduct in managing Exchange, thus implicates interstate commerce.

Moving to the particulars of the Complaint, its first page states that it is filed on behalf of "All members of Erie Insurance Exchange[,]" and under the description of the parties, each identified subscriber "is filing this complaint on

---

[1] I agree with the majority that jurisdiction is analyzed "as of the time [the case] was filed in state court." *Knowles*, 133 S. Ct. at 1349; *see* Majority at 9 n.3. As a result, whether there is jurisdiction under CAFA in this case is based solely on the Complaint that was originally filed in the Court of Common Pleas.

behalf of all members of Exchange." The first count, for breach of contract, is necessarily brought on behalf of all of the subscribers because the Subscriber's Agreements are between each individual subscriber and Indemnity. Exchange would not have standing to bring a breach of contract claim related to the Subscriber's Agreements because Exchange is not a party to the Subscriber's Agreements.

The second count, for breach of fiduciary duty, also must be brought on behalf of the subscribers because the Complaint alleges that Indemnity is a "fiduciary for Exchange and its Subscribers" and "breached those duties." Even if Indemnity breached a duty owed to Exchange, the Complaint also alleges that Indemnity breached duties it owed to all of the subscribers, which only they can vindicate. Both of these counts conclude by seeking relief for individuals by stating that "the plaintiffs, on behalf of all members of Exchange, request a sum . . .." In contrast, the third count states that the claim is brought "on behalf of Exchange," rather than on behalf of "all members of Exchange," further indicating that the first two counts seek individual relief for all of the subscribers. The language in the Complaint, as well as the nature of the claims, indicates it was filed on behalf of all of the subscribers and seeks individual relief for all of the subscribers.

Also significant is the fact that the complaint in the Federal Lawsuit asserts it is a class action and alleges nearly identical facts to those alleged in the Complaint here.[2] Both

---

[2] As the majority acknowledges, while this appeal has been pending, three of the plaintiffs have brought a class action in federal court on behalf of all members of Exchange. *See*

4

complaints describe Exchange as an unincorporated association comprised of subscribers and Indemnity's role as managing the operation of Exchange's insurance business. Both complaints allege that Indemnity improperly retained over $300 million worth of services charges, itemized by year, and the Federal Lawsuit, much like the Complaint here, "requests damages . . ." for a named subscriber "on behalf of herself and others similarly situate[d]." Moreover, the Federal Lawsuit, also pleading in the alternative a derivative action, states that "a formal demand in this matter would be fruitless," in part, because the Complaint at issue here was filed against Indemnity in the Court of Common Pleas. The Federal Lawsuit seeks the same relief for the same people for the same alleged wrong as the Complaint here. While the majority is correct that this later-filed complaint does not "create" federal jurisdiction, *see* Majority at 17, it does demonstrate that the facts that were pled – in both complaints – support the elements of a class action. Both complaints are quacking like ducks – whether or not the words "class action" are used or Rule 23 and its particulars are explicitly listed.

Moreover, as my review indicates, the Complaint pleads facts that would satisfy the four prerequisites of a class action – numerosity, commonality, typicality, and adequacy of representation. Beginning with the first requirement, Exchange has over two million subscribers that reside in ten states and the District of Columbia, and the Complaint seeks individual relief for all of these subscribers. These facts satisfy the numerosity requirement because it would be impracticable to join all of these plaintiffs in one lawsuit that

Complaint, *Erie Ins. Exchange v. Stover*, No. 1:13-cv-37 (W.D. Pa. Feb. 6, 2013).

5

is not a class action. The second class action requirement, commonality, is met because the Complaint alleges that Indemnity breached a contract that it had entered into with each subscriber and breached the fiduciary duty it owed to each subscriber. As a result, the questions of law and fact are common to the class of individual subscribers on whose behalf relief is sought. Additionally, the allegations that each subscriber has the same claims against Indemnity that the four named subscribers have satisfies the third class action requirement of typicality. Finally, the fourth requirement, adequacy of representation, is satisfied by the factual allegations in the Complaint that each subscriber has an identical relationship with Exchange. Thus, the four named plaintiffs would fairly and adequately protect the interests of the class because all of the subscribers have identical interests vis-à-vis Indemnity.

A close reading of the Complaint reveals that it pleads facts that would satisfy the four essential requirements of a class action. For purposes of jurisdiction under CAFA, this Complaint then is a class action. Because this case meets the other requirements for CAFA jurisdiction, a federal court should exercise its jurisdiction over it and deal later with any deficiencies in the Complaint as pled.[3]

---

[3] CAFA provides for federal jurisdiction over class actions that also have (1) minimal diversity; (2) an amount in controversy over $5 million; and (3) a proposed class that consists of at least 100 members. 28 U.S.C. § 1332(d)(2); 20 U.S.C. § 1332(d)(5). The Complaint also meets these requirements. Subscribers are citizens of ten different states and the District of Columbia while Indemnity is a Pennsylvania citizen, creating minimal diversity. The Complaint alleges that Indemnity improperly retained over

**B.**

When the defendants moved for removal under CAFA, the District Court should have reviewed the Complaint – as we do above – to determine whether the requirements of a class action were present.  In doing so, it should have kept in mind what Congress intended in creating CAFA.   The Committee Report instructs that "the definition of 'class action' is to be interpreted liberally."  S. Rep. No. 109-14, at 35 (2005).  I agree with the majority that determining whether a civil suit is a class action begins with the definition of class action in § 1332(d)(1)(B).  However, the role of the court in a CAFA case does not end there.   The court must also determine, based on a close reading of the entire complaint, whether the complaint pleads facts that would satisfy the essential elements of a class action, namely numerosity, commonality, typicality, and adequacy of representation.  If a complaint, on its face, satisfies these requirements, under CAFA it is properly removed to federal court.  It is then the function of the district court to inquire whether there are any deficiencies in the complaint.  If so, the court should either

---

$300 million worth of fees, and neither party has alleged that the amount in controversy is less than the required $5 million. Finally, the proposed class consists of at least 100 members because the class consists of all members of Exchange, of which there are over two million.  This lawsuit meets the requirements for federal jurisdiction under CAFA, and the District Court erred in remanding the case.

7

have them corrected or dismiss the complaint.[4] This approach ensures that interstate class action lawsuits are litigated in federal court, as CAFA intended.

A putative class must demonstrate numerosity, commonality, typicality, and adequacy of representation when bringing a class action, so it logically follows that to qualify as a class action for purposes of CAFA jurisdiction, a complaint should plead facts that would fulfill these requirements. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012); Fed. R. Civ. P. 23(a); *see also, e.g.*, Pa. R. Civ. P. 1702. These requirements are the essence of Rule 23 and similar state rules so that even a complaint that does not identify itself as "filed under" this type of rule can nonetheless be "filed under" these rules for purposes of CAFA jurisdiction. Stated another way, a complaint that pleads facts that would fulfill the four essential requirements of a class action is "filed under rule 23 . . . or a similar state statute or rule . . . authorizing an action to be brought . . . as a class action" even if the complaint fails to name or exactly mirror the applicable rule. *See* Majority at 8 (citing 28 U.S.C. § 1332(d)(1)(B)).

Moreover, we cannot require that a class action complaint include specific words or refer to specific procedural rules because, as the Supreme Court has admonished, courts should not "exalt form over substance" when determining jurisdiction under CAFA. *Knowles*, 133 S.

---

[4] For example, if a complaint lacks mechanisms for notifying potential class members or allowing them to opt-out – but otherwise pleads a class action – the district court may remedy this deficiency once jurisdiction is established.

8

Ct. at 1350; *see* S. Rep. No. 109-14, at 35 (2005) ("[CAFA's] application should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff or the state rulemaking authority."). "A complaint that contains class-type allegations historically has been assumed to assert a class action before formal class certification." *Coll. of Dental Surgeons of P.R. v. Conn. Gen. Ins. Co.*, 585 F.3d 33, 40 (1st Cir. 2009).

Indeed, this Court has held in other contexts that when determining jurisdiction, courts "are not bound by the label attached by a party to characterize a claim and will look beyond the label to analyze the substance of the claim." *Jarbough v. Att'y Gen.*, 483 F.3d 184, 189 (3d Cir. 2007); *Centifanti v. Nix*, 865 F.2d 1422, 1429 n.8 (3d Cir. 1989); *see also La. ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 424 (5th Cir. 2008) (noting in a case dealing with CAFA that federal courts look to the substance of an action, not how it is labeled, when determining whether there is jurisdiction). Under this approach, a court will look beyond the rule a plaintiff may use to characterize the claim and instead look to the specific facts pled. If these facts would satisfy the four class action prerequisites, the complaint pleads a class action for purposes of CAFA jurisdiction.

The majority's holding that CAFA requires that a class action be "filed pursuant to Rule 23 . . . or under any state statute or rule that is similar to Rule 23," *see* Majority at 8, entails too formalistic an inquiry. CAFA does not require that a complaint methodically apply Rule 23 or a state law analogue, and the majority's implicit requirement that this Complaint do so is just a small step away from requiring a lawsuit to contain specific words to be a class action. It

9

should be of no moment that a litigant failed to explicitly mention a class action rule or deficiently pled a complaint under that rule because, "like the rest of the Federal Rules of Civil Procedure, Rule 23 *automatically* applies 'in all civil actions and proceedings in United States district courts.'" *Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1438 (2010) (quoting Fed. R. Civ. P. 1); *see* Fed. R. Civ. P. 81. The substance of a complaint determines which procedural rules apply.[5] Even parties that agree a complaint pleads a class action may use discovery to bolster the complaint's compliance with Rule 23. Much like an improperly pled federal cause of action, deficiencies in a complaint that pleads facts satisfying the essential elements of a class action do not deprive a federal district court of subject matter jurisdiction, though the complaint may ultimately fail.

Moreover, application of the majority's approach to the Complaint further demonstrates that their emphasis on the particular rules referred to in the Complaint is misplaced. The fact that Pennsylvania Rule of Civil Procedure 2152 contains "none of the defining characteristics of Rule 23," *see* Majority at 9, does not mean that the facts alleged in the Complaint do not require the District Court to apply Rule 23

---

[5] As a result, if this case were to remain in federal court, as I believe it should, the District Court could ensure that the requisite procedural rules are followed with respect to class certification, notice to absent class members, opt-out provisions, and the appointment of lead plaintiff and class counsel, despite the absence of any explicit mention of these procedural details in the Complaint.

to correct any deficiencies in the pleading or dismiss the case.[6, 7]

[6] And as the majority itself notes, the fact that the Complaint states that the plaintiffs "bring this action pursuant to Pa.R.Civ.P. 2152" may be an incorrect application of the law because Exchange is a corporate entity, not an unincorporated association. *See* Majority at 10; Pa. R. Civ. P. 2176 ("[A] corporation or similar entity includes any . . . insurance association or exchange."). Thus, relying on the facts actually pled, rather than the plaintiffs' assessment of their own claims, is more likely to identify cases that are truly class actions and that involve the interstate ramifications about which Congress was concerned when it enacted CAFA.

[7] To the extent that the majority relies on Pennsylvania's prohibition of class actions by unincorporated associations, they are also misguided. The majority cites *Underwood v. Maloney*, 256 F.3d 334, 337 (3d Cir. 1958), for the proposition that "suits by members of an unincorporated association (such as those contemplated by Rule 2152) may *not* be brought as a class action." *See* Majority at 10 (emphasis in original). *Underwood* cites as support for this proposition, *inter alia*, the Note to Pennsylvania Rule 2230(a), which explicitly states that "suits by or against unincorporated associations are not to be brought as class suits under this Rule." Note to Pa. R. Civ. P. 2230(a) (rescinded 1977). Since the decision in *Underwood*, Rule 2230, which addressed class actions, has been rescinded and Rules 1701-04 have been enacted in its place. These new class action rules neither include a similar note nor explicitly address whether class actions may be brought by unincorporated associations. Moreover, as described in Part

11

Finally, the majority's approach is also inconsistent with Congress's intent that CAFA broadly confer jurisdiction on federal district courts to hear class actions. The majority's approach makes it easier for plaintiffs to forum shop and "game" the system. As a result of the requirement in *Knowles* that CAFA jurisdiction be determined based on only the original complaint, 133 S. Ct. at 1349-50, a strategically-pled complaint could remain banished to state court if the plaintiffs adequately disguise any class claims by inaccurately filing them under a non-class action procedural rule. This cannot be what Congress intended.

I would hold today that a civil complaint which pleads facts that could satisfy the four prerequisites of a class action – numerosity, commonality, typicality, and adequacy of representation – is a class action for purposes of CAFA jurisdiction. A close reading of the Complaint here reveals that it pleads facts which would meet this standard, and, as a result, the District Court erred in remanding this case back to state court.

Because I would hold that the Complaint here pleads a class action for purposes of CAFA jurisdiction, I respectfully dissent.

---

A, the Complaint here seeks relief for individual subscribers, and Pennsylvania law allows subscribers, in their individual capacity, to bring a class action. *See, e.g., Nye v. Erie Ins. Exchange*, 470 A.2d 98, 99-100 (Pa. 1983) (finding that subscribers of Exchange had standing to bring a class action).

12