JOYCE RANDAZZO, A MINOR, BY HER FATHER AND GUARDIAN *AD LITEM*, THOMAS RANDAZZO, AND THOMAS RANDAZZO, IN HIS OWN RIGHT, PLAINTIFFS-RESPONDENTS, v. INES L. BACQUE AND RUTH SINCLAIR, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 10, 1955—Decided October 21, 1955.

Before Judges CLAPP, JAYNE and FRANCIS.

Mr. *Horace G. Brown* argued the cause for the respondents (*Messrs. Brown, Connery, Kulp & Wille,* attorneys).

Mr. *E. Milton Hannold* argued the cause for appellant Ines L. Bacque (*Messrs. Hannold & Hannold,* attorneys).

Mr. *Samuel P. Orlando* argued the cause for appellant Ruth Sinclair (*Messrs. Orlando, Devine & Tomlin,* attorneys).

The opinion of the court was delivered by

FRANCIS, J. A. D.   Automobiles driven by the defendants Ines L. Bacque and Ruth Sinclair collided at a street intersection in Vineland, New Jersey. The infant plaintiff Joyce Randazzo, a passenger in the car of Mrs. Bacque, received injuries which resulted in this action. Her father Thomas

Randazzo sought recovery also for his consequential losses. The jury found both drivers guilty of negligence and awarded the infant $22,000 (this being $2,000 in excess of the demand in the *ad damnum* clause of the complaint), and the father $2,682.

Both defendants sought a new trial on the ground that the verdicts were excessive. The medical and hospital expenses totaled $682.95. The trial court reduced the father's award to $680, which modification was accepted in lieu of a new trial on all issues. However, the attack on the infant's recovery was dismissed and the court on his own motion amended the *ad damnum* clause to make it conform with the verdict.

On this appeal, both defendants charge as error the failure to vacate the $22,000 verdict and to order a new trial as to damages only. In addition the defendant Bacque assails as illegal the amendment of the *ad damnum* clause.

The area in which this Division can exercise its appellate power is sharply circumscribed on such a review. We cannot interfere with the order of the trial court "unless it clearly and unequivocally appears there was a manifest denial of justice under the law." *Hartpence v. Grouleff*, 15 *N. J.* 545, 549 (1954).

The application of such a test makes necessary a study of the evidence adduced before the jury. It requires also an appraisal of any alleged improper incidents at the trial; and if the charge of impropriety is sustained, an evaluation of their reasonably probable influence on the deliberations of the jury. These measures are not engaged in for the purpose of substituting our judgment for that of the jury or of the trial court as to the *quantum* of reasonable compensation. Our object is to determine, after giving due regard for the opportunity of the trial court and the jury to pass upon the issues and evidence involved and the credibility of the witnesses (*R. R.* 1:5–3(*a*)), whether allowing the verdict to stand would give judicial sanction to a result which clearly and unequivocally manifests mistake, passion or prejudice on the part of the jury.

Joyce Randazzo was 15 years of age at the time of the trial. The accident which produced her injuries took place on March 7, 1954, about 10½ months earlier.

In the collision she sustained a blow on the head; whether she came into contact with the person of a younger girl who was sitting on her lap or with some part of the car in which she was riding, does not appear. She was dazed but alighted from the car unaided when the door was opened by the driver. There is some testimony that she fell after doing so; but she walked to a nearby house, arranged for an ambulance to be called, she talked on the telephone with the husband of Mrs. Bacque and advised him of the accident although she felt dizzy and did not look up the number herself. She returned to the scene, and remained there while the ambulance removed another injured passenger. Then she went to the hospital in the car of Mr. Bacque who appeared in response to the telephone call.

At the hospital the Randazzo family physician was telephoned and on arrival he examined Joyce. She was complaining principally of severe headache and dizziness. A diagnosis of cerebral concussion was made and she was put to bed.

The hospitalization lasted for almost a month. During this period she suffered from dizziness and headaches and the doctor conceded that the nurses notes showed a gradual diminution of such complaints from March 11 to the date of discharge. And he said, "from the first day there was quite an improvement." On the basis of two sets of X-rays taken on different days, it was strongly suspected that she had a one-inch linear fissure fracture of the skull and she was treated as a fracture case.

While in the hospital all of the medical tests designed to search out brain damage resulting from the concussion were negative. At no time throughout the history of the case down to the last examination before trial had such tests revealed to the treating physician or to the neuro-psychiatrist, who was called in to examine on two occasions, any objective signs of brain damage.

The treating physician made two home visits to Joyce in the two additional weeks she remained in bed after being discharged from the hospital. Thereafter, once a month she came to his office for observation. On these occasions, he continued to make the usual tests for objective indications of brain injury and they were always negative.

However, the complaints of headaches continued. The young lady asserted they had not diminished in extent since she returned to school in September 1954, and that she still gets dizzy when they are severe. In describing the headaches, she said they came "nearly every day" and "they may have lasted for hours, maybe less."

The treating physician testified that the sole symptom now present is the complaint of headaches with no objective findings of brain damage. He accepted the subjective complaint as true and "believed" that the condition is permanent; he did not think in her case "it will clear up too soon"; "the headaches in her case, I think will last, if anything for a long time." This doctor is a general practitioner. Such a practitioner's opinion, he volunteered, would not be "as good" in this type case as that of the neuro-psychiatrist he called in. And he conceded that the specialist had reported to him that Joyce should gradually recover.

We have not attempted to specify all of the details of the subjective complaints as testified to by Joyce and her mother. The outline is primarily a prelude to statement of the circumstances which impel us to the conclusion that the trial court erred.

In his opening, counsel for the plaintiffs told the jury to observe Joyce carefully while she testified and they would notice that

"the left eye and the left corner of the mouth will twitch, like this, just a little, the least little bit. She doesn't know she is doing that. That is an indication that there has been an injury to one of the branches of one of the cranial nerves. *The doctor will explain all of that to you.* I probably may not even allude to it when she is on the stand, but you please watch for it. Ever so little, but you will see it. That is not from an injury to the

brain. That is from a local injury to the nerves that control that part of her face and eye."

When Joyce was testifying, the matter was pursued thus:

"Q. Now what about the left side of your face, do you have anything about the left side of your face that is different than before?

A. There's that twitching of my eye. That's the only thing I notice.

Q. You notice that at times, do you?

A. Once in a while, when I'm combing my hair or something.

Q. What is that?

A. Once in a while, if I should be combing my hair, or something, I notice it.

Q. If you are looking in the mirror, or something like that?

A. That's right.

Q. Otherwise, are you conscious of the fact that your eye is twitching?

A. No.

Q. Does it ever go down to the corner of your mouth, or don't you know?

A. I really don't know.

Q. Did you have anything like that before the accident?

A. Not to my knowledge, I don't know."

When Mrs. Randazzo testified there was no reference whatever to this twitching; no effort was made to show that she had noticed it either before or after the accident. And no one else was produced, friend or member of the family, to say it appeared after the accident or that it existed at all in fact.

Moreover and more important, although the jury had been alerted to look for the condition and assured that it would be explained by the doctor as resulting from a cranial nerve injury, the subject was never mentioned by counsel or the doctor during the entire course of a detailed direct and redirect examination.

Counsel advised us at the oral argument that he conferred with the doctor about his testimony in preparation for trial. Yet, although there was much questioning of him as a witness about tests of the eyes, he never indicated that he observed any twitching or that either Joyce or her mother or any one

else brought it to his attention. At no time was any effort made to establish a cranial nerve injury. And it is not without significance that the doctor had known and treated her before the accident.

The trial court in his charge did not discuss the injury claims at all beyond reference to legal rules to be applied. He said:

"Likewise, in order that there be recovery by the people seeking to recover, it must be shown to you by the fair preponderance of the evidence that the injuries which have been sustained were the proximate cause, or resulting from the negligence of the driver or drivers of these automobiles. In other words, there must be a connection between the negligence on the one hand and the injuries sustained on the other. If it is not proven to your satisfaction that they are, there can be no recovery for those injuries or complaints complained of, unless they are connected with the negligence of the parties against whom the complaints are being made * * *.

*     *     *     *     *     *     *     *

If you find, and this rule of law will apply to all parties, * * * if you find that the claimants are entitled to recover, the following, or any of the following elements of damage, if they have been established by the fair preponderance of the evidence as proximately resulting from the negligent conduct, may be considered by you in determining your awards to each of the plaintiffs. In dealing with the future loss or damage, the yardstick of reasonable probability will prevail.

1. The physical injuries sustained, and the pain and suffering incidental thereto, in accordance with the nature, extent and duration of those injuries.

2. The effect on the health of such claimant.

3. The effect on the ability of the claimant to engage in the active pursuits and occupations that the ordinary individual in the circumstances of these claimants could and would normally engage in.

4. The losses reasonably incurred and to be reasonably certain to be incurred in the future because of the effect upon the ability of such claimant or claimants to undertake and pursue a gainful vocation or employment.

5. The losses reasonably incurred and to be reasonably certain to be incurred in the future for medical and hospital care and attention in an effort to cure or alleviate the injuries sustained in the accident in question.

And, lastly, the property damage.

Now, in dealing with the question of damages, as has been explained to you, if you find that Joyce Randazzo is entitled to a verdict, that verdict shall be in one lump sum for such amount as

you feel will reasonably compensate her in money for the pain and suffering that she has undergone and for the effects on her health in the future, and *for these things that have been testified to, from which she suffers at the present time.*"

We have the conviction from the State of the record, particularly from the nature of counsel's opening and Joyce's testimony, that the jury mistakenly assumed that if they saw a facial twitching it came from the accident and compensation for it should be included in the verdict. The extent to which it entered into the amount finally decided upon is, of course, purely conjectural. But if the jurors concluded that the twitch existed and would be permanent and perhaps interfere with her future marriage prospects, for example, it may have had a considerable influence thereon.

Perhaps from a strict legal viewpoint, although plaintiff does not suggest it, defendants should have moved to strike the testimony about the facial twitch or presented a request to charge, excluding it from jury consideration. However, under the circumstances here, when the excessiveness of the verdict is under review, the cause of essential justice does not seem to be served by adhering to a rigid requirement for such a trial tactic.

Additionally, it may be noted that in plaintiff's counsel's opening he told the jury that:

"The girl has had, ever since this accident, excruciating headaches and dizziness, trouble with her eyes, *part* of which was corrected later on by glasses for reading * * *."

The testimony indicated that the treating physician had called in an eye specialist at the hospital because he thought there might be some damage to one eye which became swollen and black and blue. The specialist found no damage and the report of X-rays taken March 16 was:

"Discs (eye) well defined. No evidence of increased intracranial pressure. No hemorrhages indicated."

Some time after her release from the hospital, eye examination revealed an astigmatism as the result of which glasses

were prescribed. The treating physician said that the condition was in no way caused by the concussion.

In the course of the plaintiff's cross examination, when an inquiry was being made about the glasses, her attorney said:

"Mr. Brown: Your Honor, so there may be no misunderstanding, we do not allege she has to wear glasses as a result of this accident. There was a refractive error that she has to wear glasses for. I may have given that impression, and I did not mean to.

Mr. Devine: I did have that impression, definitely, from the opening, if your Honor please.

Mr. Brown: All right. We make no claim for that."

Again, during the direct examination of Joyce and her mother, proof was adduced in support of a claim that since the accident Joyce has experienced severe headaches, dizziness, nausea, pains and cramps with her menstrual periods which were not present before she was injured. However, the doctor did not testify to any such conditions. He was not questioned about them nor was his opinion sought as to their causal relation to the accident.

When all of the facts and circumstances of the injury claim are considered, we are satisfied that the size of the verdict in all reasonable probability reflects an erroneous belief on the part of the jury that compensation was proper for the eye twitching condition.

The matter of the reference in the opening to the eye glasses as relieving the eye trouble in part and the medically unsupported allegation of menstrual difficulties, standing alone, are not especially significant. But in the framework of the case they add to the conviction that the size of the verdict represents passion and prejudice rather than any legitimate standard of compensation. And in this connection, the fact that the award exceeds the monetary demand of the complaint cannot be ignored. It is almost common knowledge that the *ad damnum* clause in negligence personal injury actions rarely is intended to bear any real relation to the actual value of the claim. Consequently it is even more rare

for experienced trial counsel to find himself with a verdict in excess of his demand.

■ Reference is not made to the insufficient *ad damnum* clause for the purpose of declaring that it was error to amend it to conform with the verdict. Under *R. R.* 4:55–4,

"every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even though he has not demanded such relief in his pleadings, provided the parties have been given an adequate opportunity to be heard as to the relief granted."

No reported case in New Jersey has yet construed the rule as authority to adjust the monetary claim upward to equal the sum recovered at the trial. However, under its counterpart in the federal domain (*Fed. Rules Civ. Proc. Rule* 54(*c*), 28 *U. S. C. A.*) the courts have held, and rightly so, we think, that such an amendment is proper. *Couto v. United Fruit Co.,* 203 *F.* 2*d* 456 (2*d Cir.* 1953); *Fanchon & Marco, Inc. v. Paramount Pictures,* 202 *F.* 2*d* 731, 734, 36 *A. L. R.* 2*d* 1336 (2*d Cir.* 1953); 6 *Moore's Federal Practice, p.* 1209.

However, even though the trial court had the power to amend the complaint as he did, in our judgment consideration of the entire record makes it clear that under *Harlpence v. Grouleff, supra,* the verdict should have been set aside and a new trial ordered as to damages only.

The judgment is therefore reversed and the record remanded for proceedings in accordance herewith.