**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2490-23

SANDRA PAEZ,

     Plaintiff-Respondent,

v.

RUBEN MOSCOSO, SR.,

     Defendant,

and

RUBEN MOSCOSO, JR. and
OMEGALFA CONSTRUCTION,
a business entity,

     Defendants-Appellants.

_____

Submitted January 28, 2026 – Decided May 11, 2026

Before Judges Currier, Smith and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4566-19.

Charles Shaw PC, attorneys for appellants (Charles Shaw and Aurelia Georgopoulos, on the briefs).

Raymond A. Grimes, PC, attorney for respondent (Raymond A. Grimes, on the brief).

PER CURIAM

In this contract dispute between plaintiff and defendants regarding the renovation and remodeling of a residence, defendants appeal from multiple orders regarding discovery issues, admissibility of certain evidence during trial and for attorney's fees and costs. After review of defendants' contentions in light of the record and applicable principles of law, we affirm.

I.

Plaintiff purchased the subject building in 2016 as an investment property. She intended to convert the one-family house into a two-family home by transforming the above-ground basement, or first-floor, into an apartment to use as a rental unit. At the time of the purchase, the second-floor apartment was occupied by tenants holding a one-year lease at a monthly rate of $1,700. Plaintiff was living in a rented apartment in Brooklyn.

In April 2018, plaintiff contacted defendant Ruben Moscoso, Jr.[1] (initially through a third party) requesting his assistance in procuring a specific type of

_____

[1] The court dismissed the claims against Ruben Moscoso, Sr. on September 18, 2023. We refer to Moscoso, Jr. as Moscoso.

2

A-2490-23

loan to fund renovations to the building. Although plaintiff was subsequently denied the loan, she retained defendants to perform the construction work.

Plaintiff executed a contract in July 2018 with defendant Omegalfa Construction.[2] Pursuant to the contract, defendants agreed to repair and remodel the residential premises in accordance with plaintiff's architectural plans, at a contract price of $83,940. Prior to hiring Omegalfa, plaintiff used two different contractors to perform demolition work in the basement. Upon his first site inspection, Moscoso described the premises as being "in pretty rough condition."

Defendants began working on the property in August 2018 but encountered numerous issues with the architectural plans that required revisions and new permit applications, repairs needed for a pre-existing plumbing issue on the second floor, and delays due to weather.

By the end of January 2019, all major work had passed inspection and was approved. According to Moscoso, defendants continued work until August 2019, including doing sheetrock, spackling, sanding, priming, flooring,

---

[2] The signature on the contract does not indicate if it is Ruben Moscoso, Sr. or Jr.

A-2490-23

installation of molding and doors, and all the finish work. Moscoso contends defendants had completed 90% of the contracted work.

However, around that time, according to Moscoso, plaintiff stopped communicating with him. After this occurred, he came to the site one day and observed other people doing work. Moscoso said plaintiff never told him to stop working or that she was replacing him with other workers. He testified that her actions prevented defendants from completing the work.

Plaintiff stated that she dismissed defendants from the job in September 2019 because the construction had been ongoing for eight months, the work was not getting done, and she did not want more time to go by without tenants. The jury was shown numerous photographs depicting the state of the construction at various stages. Plaintiff testified that she permitted the upstairs tenants to break their lease in April 2019, after they complained about the excessive noise and poor living conditions due to the ongoing construction.

## II.

In September 2019, plaintiff filed a complaint against defendants with the Better Business Bureau alleging she had paid defendants two-thirds of the monies due under the contract—$60,000—and refused to make any further

4

payments.  Defendants responded they had completed at least 90% of the work so plaintiff owed 90% of the contract price.

## III.

In November 2019, plaintiff filed a complaint against defendants for breach of contract due to negligent construction work and violations of the New Jerey Consumer Fraud Act (CFA), N.J.S.A. 56:8-2 to -233.  Plaintiff sought damages for current and future costs incurred to correct the faulty work and treble damages under the CFA.  Plaintiff stated she lost $1,700 in rent for the second-floor apartment.  Defendants filed an answer and counterclaim.  After defendants requested a statement of damages, plaintiff submitted a statement listing $29,000 as her damages.

In December 2020, plaintiff served defendants with an expert report from David M. Bekus, alleging damages in the amount of $29,715.

The initial discovery end date (DED) was extended by stipulation to February 2021.  Thereafter, defendants moved to extend the DED and the court granted an extension until June 2021.  The order provided deadlines for the service of expert reports and completion of depositions and stated:  "The court finds exceptional circumstances to reopen and extend discovery given delays caused by [COVID]-19 in conducting discovery.  The new [DED] is June 6,

5

2021 at which point this case would have had 480 days of discovery.  Arbitration is rescheduled to August 12, 2021."

On May 6, 2021, defendants moved to extend the DED to August 2021.  On May 24, defendants served their first requests for discovery to plaintiff.  Plaintiff did not respond to the requests since they were returnable after the DED.  The court denied the motion to extend the DED and the subsequent reconsideration motion.  Defendants appeal these orders.

Arbitration took place in August 2021.  Plaintiff was awarded $15,000 for repairs and completion of construction work.  Defendants rejected the arbitration award and filed a request for a trial de novo.  In September 2021, the trial court scheduled the matter for trial on November 30, 2021.  However, as trials were occurring on a limited basis due to the strictures of COVID-19, the court later adjourned the trial to May 4, 2022.  The trial was rescheduled several more times with the final date being September 11, 2023.

IV.

On the first day of trial the court considered the motions in limine filed by both parties.  Plaintiff sought to introduce evidence of two prior lawsuits in which defendants were involved with other entities.  Defendants requested the

A-2490-23

court bar plaintiff's expert report, prohibit plaintiff from introducing evidence not produced during discovery, and dismiss the CFA claims.

The court denied defendants' motion to preclude evidence of prior lawsuits. The court ruled they were admissible to impeach Moscoso's testimony that there were no prior complaints against the company. Defendants appeal from this order.

In considering defendants' motions, the court denied their motion to bar plaintiff's expert report as net opinion. Defendants also sought to preclude the amendment to the report received on the first day of trial, in which the expert was amending his damages figure from $29,000 (stated in his original October 2020 report) to $70,000. Plaintiff also intended to produce a witness—a subsequent contractor hired in 2023—to testify as to the work and costs that were incurred to remedy defendants' alleged shoddy work. Defendants argued the new contractor came onto the scene four years after plaintiff terminated their contract and the incurred costs were for work to a sewer line which was not within the scope of defendants' contract.

The court denied defendants' application, finding that since defendants had not served timely discovery demands, they could not move to bar plaintiff

7

from presenting expert and lay testimony outside of the previously submitted expert report.

Defendants also moved to preclude plaintiff from introducing evidence of lost rental income. Plaintiff intended to testify that, had the renovations and construction work been completed properly, she could have received $1,400 in monthly rent for the new first-floor apartment from 2019 until the time of trial in September 2023. The court granted defendants' motion, finding that defendants had served a demand for damages and expert opinions with their answer in 2019 and plaintiff had an ongoing obligation to supplement her discovery responses. The trial court found that plaintiff had never previously alleged that she lost rent for the new apartment due to defendants' failure to timely complete the project.

During her testimony, plaintiff testified regarding the contents of a series of email correspondence and WhatsApp messages she had with defendants and the architect. Defendants did not object to the testimony or admission of the correspondence but apparently sometime thereafter moved for the court to exclude it. The court denied it on September 18, 2023, stating defendants did not serve discovery demands on plaintiff and so were not entitled to object to its use or admission. Defendants appeal from this order.

8

Also on September 18, the court again denied defendants' motion to bar Bekus's expert report and testimony, finding it was not a net opinion. The court found Bekus was qualified to testify and that he had a factual basis to support his opinions.

After plaintiff rested her case, defendants once again moved to dismiss the CFA claims on the grounds that there was no ascertainable loss. The trial court reserved decision until after the presentation of defendants' case.

On September 19, the court found plaintiff had established violations of the CFA, but reserved decision on whether plaintiff suffered an ascertainable loss because of those violations. The court also dismissed defendants' counterclaim for breach of contract.

The court further addressed plaintiff's motion to reconsider its ruling prohibiting plaintiff from testifying about her lost rental income from the first-floor apartment. The trial court cited to Lang v. Baker, 101 N.J. 147, 157 (1985), and held that the statement of damages under Rule 4:5-2 was not binding. In addition, defendants had not conducted any discovery to flesh out plaintiff's damages. The court also held that plaintiff was not restricted to the damages number set forth by Bekus in his expert report because the opinion only reflected the amount of money needed to repair or complete the work.

9

Therefore, the trial court permitted plaintiff to be recalled to provide testimony regarding the lost rent from the first-floor apartment due to defendants' failure to timely complete the project. Defendants further objected to the ruling on the grounds that plaintiff was not qualified to provide an opinion as to the rental value of the new apartment. The court found that plaintiff was a landlord who had rented out the second-floor apartment and was therefore permitted to testify as a lay witness regarding the rent she intended to charge and expected to receive.

Thereafter, plaintiff testified that based on her knowledge of rental values in the area and her lease for the upstairs apartment, she would have rented out the first-floor apartment for $1,400 a month. She expected to start renting the apartment in December 2018.

Following this testimony, the court denied defendants' motion to dismiss the CFA claims, finding there was a question of fact regarding the ascertainable loss arising from the lost rent for the first-floor apartment.

A-2490-23

On September 21, 2023, the jury returned a verdict in favor of plaintiff, finding defendants breached the contract, and awarding $29,715 in damages.[3] The jury also awarded $1,700 as "other damages" for the loss of rent for the upstairs apartment.[4] Although the jury found defendants violated the CFA in several aspects, it determined plaintiff only proved damages for the failure to provide a start and end date on the contract. The jury awarded $43,000 for that violation. The trial court tripled the $43,000 damage award on the CFA violations to $129,000.

After considering plaintiff's application for counsel fees and costs on February 8, 2024, the court awarded attorney's fees of $52,500 as well as prejudgment interest and costs.

On October 2, 2024, the court entered an order for judgment in favor of plaintiff and against defendant Omegalfa in the amount of (1) $35,250.98 for breach of contract and "other damages," and (2) $3,835.98 in prejudgment interest. Judgment was entered against Omegalfa and Moscoso for the trebled

---

[3] This was the amount of the damages claim as opined to by Bekus. The court instructed the jury to determine whether plaintiff had proven those damages were proximately caused by defendants' breach of contract.

[4] In reading its verdict, the foreperson stated the $1,700 was for the loss of rent for the upstairs tenants.

A-2490-23

damages of $129,000 arising out of the violations of the CFA, plus $5,250.69 in prejudgment interest; and $54,263.83 in attorney's fees and costs for the total amount of $188,514.52.

V.

On appeal, defendants contend that the court erred in: (1) denying their motion to extend the DED because of the COVID-19 pandemic, and the court's failure to use the "good cause" standard rather than the "exceptional circumstances" standard; (2) denying their motion to bar plaintiff's expert report and testimony as it constitutes an inadmissible "net opinion"[5]; (3) granting plaintiff's motion to reopen discovery to allow her to testify as to lost rental income of the first-floor apartment; (4) denying their motion to dismiss plaintiff's claims to recover damages for violations of the CFA on the grounds that plaintiff did not suffer an ascertainable loss; (5) granting plaintiff's motion to introduce two lawsuits involving defendants to challenge Moscoso's credibility; (6) allowing plaintiff to introduce evidence of email correspondence

---

[5] Defendants also appeal from a September 22, 2023 order denying defendants' motion to bar plaintiff's expert report and testimony as moot. Defendants' motion was already heard and decided by the court on September 18, 2023. We need not separately address the September 22, 2023 order.

A-2490-23

and WhatsApp messages; and (7) granting plaintiff's application for attorney's fees and costs.

We consider each issue in turn.

Order Denying Extension of the DED

On May 6, 2021, defendants filed a motion to extend discovery. Despite this being the third request for an extension, defendants had not served any discovery demands upon plaintiff in the twenty months since the filing of the complaint. Defense counsel certified very generally that she and office staff were working at home until December 2020. A different attorney in the office certified he contracted COVID-19 in March 2021.

In denying the motion, the court stated:

> The motion to extend [discovery] is denied without prejudice as this case is scheduled for arbitration and movant has failed to [make] a showing of exceptional circumstances as required under [Rule] 4:24-1(c). In opposition, [p]laintiff asserts that defendant[s] ha[ve] not served or conducted any discovery despite the passing of one year and three months of discovery. While the court is mindful of the [COVID]-19 pandemic, the court does not find working [from] home or contracting [COVID]-19 after the March 19, 2021 [DED extension] order was issued to justify the failure to conduct any discovery in this case during the 480 days afforded by the court.
>
> [(Citation reformatted).]

A-2490-23

The court also denied the subsequent motion for reconsideration.

Rule 4:24-1(c), in place at the time of defendants' application, provides in pertinent part:

> If the parties do not agree or a longer extension is sought, a motion for relief shall be filed . . . and made returnable prior to the conclusion of the applicable discovery period. . . . [I]f good cause is otherwise shown, the court shall enter an order extending discovery. . . . No extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown.
>
> [(Emphasis added).]

In Castello v. Wohler, 446 N.J. Super. 1, 25 (App. Div. 2016), we noted the exceptional circumstances standard applied to extensions sought when an arbitration date (or trial date) was in place, stating:

> The moving party must satisfy four inquiries to extend discovery based on exceptional circumstances: (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.
>
> [Quoting Rivers v. LSC P'ship, 378 N.J. Super. 68, 79 (App. Div. 2005).]

14

Here, the court found working from home and contracting COVID-19 did not constitute exceptional circumstances to justify a further extension of the DED. We also note counsel did not supply any facts to support their "diligence in pursuing discovery," nor did counsel specify what discovery needed to be completed, other than informing they intended to schedule depositions and serve expert reports "to the extent necessary."

Having reviewed the court's order for abuse of discretion, we find none. See Brugaletta v. Garcia, 234 N.J. 225, 240 (2018).

Before this court, defendants rely on Hollywood Café Diner, Inc. v. Jaffee, 473 N.J. Super. 210, 220 (App. Div. 2022), to argue that the trial court should have considered the extension application under a good cause standard. Hollywood Café was issued in 2022, after these events. Nevertheless, we are satisfied defendants' scant generalized reasons for the needed extension would not constitute good cause. As stated, defendants had not yet served any discovery requests.

### Defendants' Motion to Bar Plaintiff's Expert Beckus and to Dismiss Plaintiff's Claim to Recover Construction Damages Based on Breach of Contract

Defendants contend the court erred in denying their motion to bar Bekus's expert report as it was inadmissible net opinion under N.J.R.E. 703. After

reviewing the court's decision for an abuse of discretion, we discern none. Following extensive questioning, the court found Bekus was qualified, he visited the premises, spoke with plaintiff and took photographs. He also included a damages calculation. All of defendants' arguments concern the weight of the evidence, which defense counsel raised during cross-examination of the expert. The court did not err in admitting the report and testimony.

Order Granting Plaintiff's Motion to Reopen Her Case-In-Chief to Permit Her Testimony on Lost Rental Income

As set forth, the trial court considered this issue several times during the trial. Ultimately, the court permitted plaintiff to testify as to the rental income she lost because the new first-floor apartment was not finished in the expected timeframe. Defendants contend the court erred in permitting the testimony because they were not apprised of this element of damages until the first day of trial, and plaintiff was not an expert in rental values.

The court did not abuse its discretion in this ruling. Defendants did no discovery. Had they requested plaintiff to timely answer interrogatories, plaintiff would have been bound under Rule 4:17-7 to supplement and amend those interrogatories prior to trial with any further new information. Defendants also did not depose plaintiff. Therefore, she was never asked about her elements of damages including her expectation of renting the first-floor apartment.

16

Plaintiff was not qualified as an expert. She testified as a lay person regarding the rental value she expected to receive for the first-floor apartment. She based the value on her experience of renting out the second-floor apartment as well as her knowledge of comparable rental values in the area. Plaintiff further testified that she had conversations with defendants while the project was ongoing of the need to timely finish the first-floor apartment so she could rent it out as the building was purchased as an investment property.

Order Denying Defendants' Motion to Dismiss Plaintiff's Claims to Recover Treble Damages for Violations of the CFA

For the reasons stated above, there is no merit to defendants' argument on this point. Plaintiff testified as to the damages she claimed regarding the loss of rent from the first-floor apartment. The jury found plaintiff demonstrated an ascertainable loss (although it awarded plaintiff half of what she sought) from defendants' violation of the CFA.

Order Granting Plaintiff's Motion to Introduce Evidence of Two Lawsuits Involving Defendants to Challenge Moscoso Jr.'s Credibility

Plaintiff moved in limine to admit evidence of two Superior Court cases involving Omegalfa to impeach Moscoso's credibility regarding an interrogatory response. The court permitted the evidence and issued the jury several limiting instructions as to its use.

17

Interrogatory 12 asked: "If you contend that the party propounding these interrogatories was guilty of negligence, set forth all facts, not conclusions on which you base that allegation of negligence." Moscoso responded in December 2020, in relevant part: "[W]e have been in business since 2008 and have never had one complaint in 11 years." However, Omegalfa was named in a counterclaim in a 2020 Bergen County suit and as a defendant in a 2019 Hudson County action.

The court granted the motion, stating:

> I'm going to allow it because you can't say that [you've] never had a complaint filed against [you] when there were two other civil lawsuits, complaints like this complaint filed against [defendants]. And in the Interrogatory answer he doesn't clarify.
>
> I don't know how much . . . weight [the jury is] going to give it, but I'm going to allow it.

Defense counsel asked Moscoso to explain his interrogatory answer during his testimony and plaintiff's counsel cross-examined him on it. The court gave the jury several limiting instructions regarding the purpose of the testimony and its use of the evidence. The court also referenced the limited use of the evidence in the jury instructions. We see no abuse of discretion in permitting the evidence.

A-2490-23

<u>Order Permitting Plaintiff to Introduce Evidence of Email Correspondence and WhatsApp Messages</u>

The parties communicated with each other via email and an app—WhatsApp. Plaintiff's counsel asked plaintiff about several messages between she and Moscoso through the app, which included photographs. Plaintiff moved to admit the evidence without objection.

It appears that on the following trial day, defendants objected to the admission of the WhatsApp evidence. The court overruled the objection, stating:

> Now what we are talking about, obviously, with the [WhatsApp messages] are prior statements that . . . [d]efendant had with . . . [p]aintiff that . . . [p]laintiff used [in] her case in chief. There was no discovery request to . . . [p]laintiff to produce any statements by any parties or any persons that . . . [p]laintiff intends to use at trial. So therefore, that discovery obligation is out the window.
>
> It was not required to be disclosed in discovery and I'm gonna permit it to . . . remain.

Without conducting discovery, defendants cannot now argue these messages and emails between plaintiff and Moscoso were undisclosed or a surprise. In addition, plaintiff testified that Moscoso insisted on using WhatsApp for communications, a statement Moscoso did not contradict in his

19 <span></span>

own testimony. Nor did Moscoso assert the emails were not authentic. We discern no reason to disturb the court's evidentiary ruling.

Order Granting Plaintiff's Application for Attorney's Fees and Costs

Defendants contend since it was error for the court to permit the CFA claim to proceed to the jury, they are not liable for counsel fees. Because we have not found error in the court's orders regarding the CFA claim, we need not address this argument. After proving an ascertainable loss arising from a CFA violation, plaintiff was entitled to counsel fees under the statute. N.J.S.A. 56:8-19.

Defendants also assert the award of fees and costs was unreasonable. We disagree.

Plaintiff requested approximately $103,000 in counsel fees and costs in a detailed certification of services with itemized billings. The court considered the hourly rates and reasonableness of the specific billings and reduced the fee award to $52,500. We see no abuse of discretion. See Litton Indus. Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) ("[A] reviewing court will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'") (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)).

A-2490-23

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2490-23